## Aaron G. Peer v. Michael B. Kean and others.

*Title attaching under executory contract.* A. sold a steamer to B. by contract, with a stipulation that B. should, with reasonable dispatch, finish up a certain frame then owned by other parties, or a new one of the same size and new .model, then A.'s wife to own one-half interest in such new vessel. This frame, mentioned in the contract, proved unfit for the engine of the steamer sold, and was not used, and the steamer was run as a tug until she was burned; then a new boat was built and the engine of the former steamer placed in it. The parties considered this new boat as contemplated by said contract, and acted accordingly in her management. *Held*, that this new steamer is to be regarded as the one embraced in the contract, and that the delay in her construction, and any variation in her fitting up, being ·with the consent of both parties, did not abrogate the original agreement; but this is to be considered as such a fulfillment of its terms, as was acceptable to the parties. It was, therefore, further held that the wife of A. acquired, by virtue of said contract, the one-half of the new steamer, subject to the expenses and payments made by B. as stipulated.

There being an executory contract by the part performance of which the complainant has become entitled to the one-half interest in a vessel, the title could not pass but by conveyance, and on the refusal of defendant to convey, there would in law exist only a claim for damages; but in equity a party obtains under an executory contract touching an ascertained piece of property a specific equitable interest, and can enforce it as an equitable title, when the remedy at law is not full and adequate.

*Cestui que trust.* One who is a *cestui que trust*, and not a direct party to a contract, all of the provisions of which are not for his benefit, has equitable rights, and the nature of those rights is such as to bring their redress more appropriately into a court of equity than into a court of law.

*Nature of the property. Relation of parties. Specific performance.* The property in this case was of a peculiar nature, difficult of valuation or substitution. The relations of the defendant, as expending money for the mutual benefit of himself and complainant, were such as to furnish ground for an accounting in equity. Specific performance would remedy a breach of such a contract far more adequately than damages. Moreover, there was a payment in advance of a specific unvalued chattel, which was not by the contract made liable to forfeiture on non-compliance with its provisions. There is in the complainant an equitable interest which attached to the steamboat, and is susceptible of enforcement by a decree for a specific performance, if the facts justify it.

*Money paid by surety, when not to be credited to principal.* D. was liable as surety for a claim which the property in the defendant's hands was liable for. The defend-

ant purchased the claim and took a conveyance of certain property from D. in consideration of releasing him as such surety. The defendant having bought in the claim and being entitled on an accounting between himself and complainant for the amount of such claim; *held*, that he could not be charged with the property received by him for D.'s discharge as surety.

*Heard May 4th and 5th. Decided July 11th.*

Appeal from Wayne Circuit in Chancery.

The original bill was filed for the specific performance of an agreement made May 20th, 1859, between the complainant and the defendant Michael B. Kean, under which it is alleged said Kean built a steamboat called the "Philo Parsons"; for an account of the earnings of said steamboat from the time she came out, in May, 1861; and for a conveyance of one half of said boat to complainant, in fulfillment of said agreement.

Other defendants were brought in by supplemental bill, under allegation that, after the filing of the original bill, they became purchasers of said boat, with knowledge of complainant's claim.

The cause was heard upon the pleading and proofs, and the bill dismissed.

The complainant appealed.

The facts are fully stated in the opinion.

*Wm. P. Wells* and *A. Russell*, for complainant.

*Newberry & Pond*, and *G. V. N. Lothrop*, for defendants.

CAMPBELL J.

The bill in this case is filed to obtain a conveyance of the undivided half of a steamer, called the "Philo Parsons," complainant offering to pay such sums as may be due defendant, Michael B. Kean, who is called upon to account for the receipts of the vessel, which has been under his management.

Complainant A. G. Peer was in 1859 owner of a steamer called the John Owen, which he sold to M. B. Kean, and agreed to receive back an interest for the benefit of his wife, (upon whose estate he is now administrator), in a new steamer

which was to be built and completed by Kean under the following agreement.

"ALGONAC, St. Clair County, Michigan,
          May 30th, A. D. 1859.

"In consideration of bill of sale of steamer "John Owen," made and executed to me, the undersigned, this day, by Capt. Aaron G. Peer, I do hereby agree and obligate myself to said Aaron G. Peer, to do in manner following, to wit: with reasonable dispatch to finish up the frame or hull, now unfinished, in village of Algonac, St. Clair county, Michigan, and now owned by A. & J. Smith, or a new one of same size and new model as may, on or before the fifteenth day of April next hereafter, the joiner work of said boat to be finished up equal to and as near the same style and finish, as may be, of the steamer "Sea Bird," of Newport, whereof E. B. Ward is owner, to be so finished up, according to draft, hereafter to be furnished and agreed on as to arrangement of cabins, &c. Said Capt. Peer is to have, and may have, the superintendence of the building and finishing up of said boat, as aforesaid, and she is to be so finished up ready to receive her engine, at the cost of and expense of said M. B. Kean, said Kean using and putting therein such parts of the old steamer "John Owen," as he may think suitable for the same, and the said Michael B. Kean, as ship husband for said boat, does hereby appoint the said Aaron G. Peer, to be master or captain of said boat, after being so ready for sea, and at a salary of three hundred and fifty dollars per season, to be paid by said M. B. Kean, as his share to said Capt. Peer, if he wishes to sail said boat as her master. But said Aaron G. Peer is not obliged to sail said boat as master or otherwise, unless he wishes so to do; said salary as aforesaid is not to be reduced while said Aaron G. Peer is master of said boat, if he wishes so to be, and in all respects does well and properly discharge his duty as such. And it is also agreed by said Aaron G. Peer, and hereby consented to by said M. B. Kean, that said Peer will continue to run the tug boat "John Owen," as a tug, during the balance

of the present season, A. D. 1859, at a rate of salary equal to half of six hundred dollars for the whole season. Also to be entitled to one-half part of the earnings of said boat, and liable for one-half part of all her debts, and all other liabilities of whatever name or nature, which does or may attach to said boat from date hereof, and during the time she runs as a tug boat.

"And in consideration of the foregoing agreements, if complied with, I hereby agree, when the new boat is finished, to . give a bill of sale of one-half part of said boat to Mrs. Euphemia A. Peer. She, the said Euphemia A. Peer, her administrators or assigns, first fully indemnifying and paying me, the said M. B. Kean, for and from all costs, charges and expenses, advances, liens, or incumbrances, of whatever name or nature, which may have been paid by me, or I become liable for on the steamer "John Owen," or otherwise settled; also all other additional expenses incurred by me in fitting out said new boat over one-half part of the cost of the same, as aforesaid, all danger and damages from fire or accident to said new boat to be on joint risk from date.

"In presence of ARTHUR WALKERDINE.

"M. B. KEAN.
"A. G. PEER."

The frame referred to in the contract was found to be too small for the Owen's engine, and the Owen was used as a tug, without dismantling, until she was disabled and burned. Her engine was subsequently put into an entirely new vessel called the Philo Parsons; Peer being employed more or less in fitting her out, and acting as master until suddenly dismissed in July, 1861, without any assigned cause. The testimony shows that the Parsons was designed to be used in fulfillment of the contract, and that the delay in building was assented to by all parties, and all regarded her as the boat contracted for. She was at first used without an upper cabin, as a tug, but was subsequently, and after Peer's dismissal, completed for passenger business, and has been used for that purpose. At the time

of the sale of the Owen, she was subject to a claim due to one Lee for over $3,000, for boilers furnished. In order to get this debt removed from the Owen and extended, Peer and wife made an arrangement whereby they transferred to Lee their contract with Kean, and Lee agreed to make his money out of the earnings of the proposed new steamer, and Kean assented to the assignment and agreed with Lee not to insist upon the discharge of the other claims which Peer had promised to remove. In July, 1861, Kean purchased this claim of Lee, and continues to hold it. He has also paid some other claims against the Owen. He has always controlled half or all of the Parsons.

The complainant, in right of his wife's estate, now demands a conveyance upon payment of such balance, if any, as may be due, claiming, however, that the moneys earned, if properly applied, will pay up in full all indebtedness.

The first question that arises is whether, under the contract, Mrs. Peer obtained any interest in the Philo Parsons.

The contract was not, in terms, confined to the new frame that was at the time on the stocks, and as Kean did not see fit to elect to use that, the agreement remained at large until some other vessel was selected on which to apply it. The Philo Parsons was thus designated by the common conduct of the parties, the engine of the Owen was put into her, and Peer was put in command, thus making a part performance in conformity with the agreement. If the agreement had been to finish a specified vessel, then an agreement to substitute the Philo Parsons would have been distinct, and must have been sued upon as a new bargain; but as Kean was at liberty to use any suitable boat he pleased, not essentially different from the one contracted for, the arrangement by which the Parsons was designated was in effect a performance of the original contract, and being accepted as such by both parties, the case made is not variant in substance from that alleged in the bill. At law, undoubtedly, the title would not pass without conveyance, and Kean's refusal to perform fully would only give an

action for damages. But in equity a party obtains under an executory contract, touching an ascertained piece of property, a specific, equitable interest, and can enforce it as an equitable title, where the remedy at law is not full and adequate.

In the present case, Mrs. Peer's interest was from the beginning that of a *cestui que trust*, who was not a direct party to the contract although beneficially interested in ·it, and all of its provisions were not made in her behalf, some being for her husband's sole benefit. While, possibly, she might have had a legal action, on her own portion of it, (upon which we need not now pass,) she had always equitable rights. And the nature of those rights was such as to bring their redress more appropriately into a Court of Equity than into a Court of Law. The property was of a peculiar nature, difficult of valuation or substitution. The relations of Kean as expending money for their mutual benefit, were such as to furnish ground for an accounting in equity. Specific performance would remedy a breach of such a contract far more adequately than damages. Moreover there was a payment in advance of a specific, unvalued chattel, which was not by the contract made liable to forfeiture on non-compliance with its provisions. There was, we think, an equitable interest in Mrs. Peer which attached to the steamboat, and is susceptible of enforcement, if the facts justify it.

The next inquiry relates to the extent and character of this interest. Under the contract certain liens upon the Owen were to be removed, and Mr. Kean was to be re-imbursed one-half of his expenses in completing the vessel's preparation for service. But there is considerable difference between the parties as to what portion of these expenses was entitled to be the subject of re-imbursement. It is claimed on the one hand that the vessel was to be completely finished at Kean's expense, and that Mrs. Peer was only to pay half of her outfit and furniture. On the other hand, it is insisted that all the expenses, after making her ready for her engine, were to be divided. The contract is perhaps ambiguous, and the conduct of the parties not at all decisive on this question. But we think the

bill has set up a case upon the theory claimed by Kean, and does not charge him with any liability to build the vessel at his own charge, beyond the readiness for the engine. This view is, on the whole, the most natural one. And complainant must therefore be held to the case he has set up. We think, therefore, that Kean is entitled to be re-imbursed upon this basis. He is also entitled to be repaid the amount of the Lee debt. Although the effect of the agreement with Lee was to shift his claim from the Owen to the Parsons, yet he was not bound to convey to Mrs. Peer until he had been re-imbursed. And Kean is clearly entitled to stand in his shoes. As to the smaller liens upon the Owen, although as against Lee, Kean could not require them to be paid, yet he does not appear to have made any such promise in favor of Peer and wife, and none is alleged or established. They are therefore valid claims to the amount he actually paid to discharge them.

The next inquiry is, how far Kean is accountable for money and property received. He is bound to account for one-half of the nett earnings of the Parsons, after deducting from the gross receipts the necessary expenses of the vessel. It is also insisted that he is bound to apply the value of certain premises conveyed to him by one Selah Dustin. It appears that Dustin was responsible as an endorser on the Lee claim, and conveyed this property as a consideration for an agreement by Kean to get him released from the Lee debt. It was not given as a payment on the debt, and was not designed for Peer's benefit, but only for Dustin's release as surety. We do not perceive, therefore, what claim Peer or Mrs. Peer could set up to have it applied for their discharge or credit.

The testimony is not such as to enable us to settle the accounts. A reference, therefore, must be ordered to determine the actual expense of completing and fitting out the Parsons after she was ready to receive her engine. An account must also be taken of the gross receipts, and of the expenditures of the Parsons from the time of her first employment, and also of the moneys paid by Kean for the various claims against the

Owen, and the amount due on the Lee claim. The amount found by the Court, on a report of such reference and the evidence thereon, to be due to Kean for such building and furnishing, and for claims adjusted, (including the Lee claim,) after charging him with one-half of the nett earnings of the Parsons, will furnish the basis of redemption.

The decree below must be reversed, with costs, and a decree entered directing a reference on the basis aforesaid, and remanding the cause to the Court below to be proceeded in accordingly.

CHRISTIANCY and COOLEY JJ. concurred.

MARTIN CH. J. did not sit in this case.