## John Miller v. D. Franklin Aldrich and another.

*Equity jurisprudence: Application of insurance moneys: Mortgages.* Where, in pursuance of an oral agreement to secure another for becoming surety for him, one had executed a mortgage to such surety on a house and lot, and had the house insured for the benefit of the mortgagee, and a subsequent purchaser of the premises subject to said mortgage had afterwards wrongfully surrendered such policy and taken out a new one in his own name for the full insurable value of the property, and without any provision for the mortgagee, the decree in a suit in equity brought by such mortgagee against such purchaser and the insurance company, compelling the application of the insurance moneys to the satisfaction of the demand secured by the mortgage, is held to be correct, and is affirmed.

*Equity pleading and practice: Parties.* To such suit in equity the mortgagor is not a necessary party, though he might doubtless have been joined as a party; and his grantee has no interest in having him made a party, since in no event could he be entitled to any relief against him.

*Equity pleading and practice: Decree: Application of insurance moneys.* The mortgage having been given as security for the mortgagee's having signed a note as surety for the mortgagor, the decree compelling the application of such insurance moneys to the payment of the mortgage, should be conditional on the surrender or satisfaction of the note, as well as the release of the mortgage.

MILLER *v.* ALDRICH.

*Equitable maxims.* No one shall obtain a benefit by his own fraud and wrong, and he who ignorantly does an injury shall knowingly make reparation, are equitable maxims applicable to this case.

*Equities.* In a contest between one who is seeking to make a gain and one who is struggling to avoid a loss, equity will favor the latter.

*Stipulation for insurance: Mortgage: Subsequent purchaser: Notice.* The stipulation for insurance for the mortgagee's benefit, being intended to afford security supplementary to and connected with the mortgage, and to keep the mortgaged property itself so far intact as a means of security as to perpetuate the safety of the mortgagee's interest in case the buildings should burn, was in equity a sort of adjunct to the mortgage, and was binding on the mortgagor and all others in his shoes with notice.

*Submitted on briefs January 28. Decided April 13.*

Appeal in Chancery from Clinton Circuit.

*Spaulding & Cranson,* for complainant.

*Walbridge & Cook,* for defendant Aldrich.

COOLEY, J.

The following facts we think are established by the evidence in this case:

Miller, the complainant, on the eighth day of August, 1871, became surety for Alpheus O. Chapman, on a note for three hundred dollars to Edward Paine, payable in two years from date with ten per cent. interest. To secure him for doing so, Chapman orally agreed to give him a mortgage on a certain house and lot, and as the lot without the house was of little value, he also agreed to keep the house insured for Miller's benefit. This agreement was carried into effect so far as the giving of the mortgage was concerned, and a policy of insurance was also taken out for the sum of one thousand dollars, loss if any payable to Miller to the extent of his interest, but terminating August 19th, 1872. On the fourteenth day of March, 1872, Chapman sold the mortgaged premises to the defendant Aldrich, subject to this mortgage, and on an oral understanding that Aldrich should perform its condition. Instead, however, of having the insurance policy assigned to Aldrich, it was

31 MICH.—52.

surrendered, and a new one taken out in the name of Aldrich, and without providing in terms for the protection of Miller.    This insurance was for eight hundred dollars, which was quite as much as the value of the building would justify.    Miller, when he was informed what had been done, called upon Aldrich and expressed apprehension about his security, but Aldrich quieted him by assuring him that in the event of loss he should be protected by the insurance money.    The building was actually destroyed by fire in the December following, and the loss has been adjusted and is ready to be paid over, but Aldrich now refuses to apply any portion of the money to the protection of Miller. The purpose of this suit is to compel the application, and the circuit court has decreed that the insurance moneys, to the amount of the Paine note, shall be paid into court to be paid over to Miller on his discharging his mortgage.

In the main we think the decree correct.    Though Chapman may have had a legal right to surrender the policy he had taken out for Miller's protection, he had no equitable right to do so; and as Aldrich knew all the facts, and took his new policy on a wrongful surrender of one which protected Miller, and for a sum which precluded Miller from insuring on his own behalf, we think Miller must be held to have an equitable interest in the new policy to the extent of his lien, whether Aldrich did or did not expressly agree with Chapman that such should be the case, as the latter says he did.    The case is within the principle of *Cromwell v. Brooklyn Ins. Co.*, *44 N. Y., 42*, and it is not important whether Chapman had or had not legally bound himself to Miller to keep up insurance for his benefit, when by virtue of the oral understanding he had actually effected such insurance.

It is objected that Chapman should have been made a party to the suit, but we discover no necessity for it.    The decree will incidentally protect him, and he might doubtless have been joined; but complete justice is done to all parties concerned, when complainant obtains the relief prayed

for. Complainant's case is, that Chapman is wholly insolvent, so that complainant has no resource but this insurance money for his indemnity; and defendant certainly has no interest in having Chapman made a party, as in no contingency could he be entitled to any relief as against Chapman, and his satisfaction of complainant's equity will at the same time satisfy any equity of Chapman based on his oral promise to pay off this claim.

It is also objected that the decree is erroneous, inasmuch as it provides that insurance money to the amount of the Paine note shall be paid to complainant when the mortgage is discharged, though this may be done leaving the note outstanding. This was probably an inadvertence in drafting the decree, and the decree should be so modified as to make the payment of the insurance money secure the surrender or satisfaction of the note, together with satisfaction of the mortgage. We cannot say that the error was immaterial to Aldrich, as, under the agreement between Chapman and himself when the sale took place, the former would doubtless have a lien on the land for his protection in case the note was not met when due and should be taken up by himself. Under the circumstances, while modifying the decree as suggested, and affirming it in all other respects, no costs will be awarded in this court.

CAMPBELL, J., concurred.

GRAVES, CH. J.

The main facts in this case, which are either conceded or so fully established as to exclude controversy, are as follows:

In August, 1871, one Chapman was the owner of a small lot at Shepardsville, in Clinton county, and nearly the entire value of the premises consisted of certain perishable erections.

He borrowed of one Paine the sum of three hundred dollars, to be paid in two years with annual interest at ten

per cent., and in order to secure the payment, he procured complainant to join with him in a note to Paine for the amount, and in order to obtain this accommodation at the hands of complainant, he verbally agreed to secure him against liability on the note by means of a mortgage on the before-mentioned premises, and it being well understood that they would prove wholly insufficient security in case the erections should be destroyed, he likewise agreed with complainant that he would keep the buildings insured for complainant's benefit. In order to carry out this agreement, Chapman gave a mortgage, but in the form of an absolute security, for three hundred dollars, to become due at the same time as the note, and likewise shortly after procured from a local agent, one Frank J. Smith, a policy of insurance for one year for one thousand dollars in the Great Western Insurance Company of Chicago.

This policy seems to have been issued about the 24th of August, 1871, and it embraced the time from the 19th of August, 1871, to the 19th of August, 1872. It was made directly to Chapman, but provided on its face that the loss if any should be payable to *John Miller*, "*mortgagee*," as his interest should appear, to the amount of his claim, and the balance to the assured.

Such being the state of things, some time thereafter, and prior to the 14th of March, 1872, negotiations were begun between Chapman and defendant Aldrich for sale and conveyance of the premises by the former to the latter, subject to the mortgage given to complainant, the amount of which was to be taken out of the purchase price, as so much to be paid by Aldrich to Miller, instead of being paid to Chapman; and finally, at the time last mentioned, the bargain was closed, and Chapman conveyed to Aldrich, subject to the mortgage, and the amount of it was deducted from the purchase price and reserved to Aldrich. At this time it was understood between Chapman and Aldrich, that the latter should step into Chapman's shoes so far as the mortgage was concerned; but whether there was any ex-

press understanding that Aldrich should assume Chapman's position in respect to the arrangement made between Chapman and Miller for keeping the mortgaged buildings insured, or whether, indeed, Aldrich then had any actual knowledge of the existence of that arrangement, is disputed. Chapman swears one way, and Aldrich another.

In passing it may be observed that the mortgage is not in evidence, and there is nothing to show whether it contained or did not contain any covenants by Chapman to make payment; and only a portion of the before-mentioned policy is in the printed record, and the portion given contains no conditions, and no question has been made as to the effect on the insurance, of Chapman's conveyance, as a consequence of particular conditions in the policy. It would, of course, be correct to say that no insurable interest remained in him after the conveyance, unless it should be claimed that he had one in consequence of the existence of covenants in the mortgage binding him to pay the mortgage debt, and hence binding him to make good what the premises might fail to satisfy. But, as said before, the record does not disclose whether there were covenants or not.

It does not appear, then, that he could insure after his conveyance to Aldrich. But this is not very important.

On the same day of the conveyance to Aldrich, the latter went with Chapman to the insurance agent, Smith, and talked with him about having the old policy assigned to Aldrich, and it was then agreed that they would call the next day and have it done. Pursuant to this understanding they went to the agent's office the next day and proposed to have the assignment made, but the agent then suggested, as a better course, the cancellation of the old policy, and the taking out of a new one to run directly to Aldrich. This scheme was at once approved by both Chapman and Aldrich. Miller was not present, and appears to have been ignorant that any thing of the kind was meditated.

The agent proceeded to ascertain the amount back

against Chapman on account of the old policy, and took a note therefor from Aldrich, the amount of which, some twenty dollars, it was understood should come out of the purchase price of the premises. The old policy was then present and was seen by Aldrich, and the proof is very strong to show that he knew its provisions, and hence knew that it contained a direction to pay to Miller as mortgagee.

The agent cancelled it, and then drew up an application in behalf of Aldrich, to the Amazon Insurance Company, for eight hundred dollars on the building, two hundred on drugs and medicines, and one hundred on household furniture and wearing apparel. Aldrich signed it, and in due time a policy was issued to him pursuant to it, and without any provision or direction in favor of Miller.

Although the conveyance between Chapman and Aldrich, and the arrangements in regard to insurance were not precisely at the same time, they were nevertheless parts of a single transaction.

Aldrich afterwards paid to Paine the first year's interest on the note, and stated to him that he expected to pay him, and do by him just as Chapman was to do; that he had traded with Chapman, and made arrangements with him to pay this claim.

On the 8th of December, 1872, the buildings were burned. The lot is worth not to exceed about fifty .dollars. Chapman is said to be insolvent. The note and mortgage were not due, and remained unpaid at the time of the fire, and there is no showing that the note has since been paid.

Miller applied to Aldrich in regard to the appropriation of the insurance money, and the latter then declared, and has continued to maintain, that he was under no legal or equitable obligation to apply any of the insurance money against the mortgage or note, or to the restoration of the buildings, and he has ever since avowed his determination that no part of the fund shall go against the mortgage debt, or be used to rebuild.

He insists in substance, that the insurance money belongs exclusively to him, and that he has the right to leave, and will leave complainant to pay the Paine note, and then to indemnify himself as well as he may by resorting to so much of the mortgaged premises as the fire left.

In this predicament of the matter, Miller filed the present bill against Aldrich and the Amazon Insurance Company, and prayed that the insurance money might go into court, and be held as a fund to save him harmless against the note, that Aldrich might be enjoined from taking proceedings against the company to coerce payment, and for general relief.

The company made no defense, and allowed the bill to be taken as confessed. Aldrich answered, and proofs being taken, the court, on final hearing, decreed that the insurance company pay into court the amount equitably due complainant on the mortgage, being at the time of the decree, February 27, 1874, three hundred and forty-seven dollars and thirty-eight cents, with interest at ten per cent. from August 8th, 1873, together with complainant's costs to be taxed, the same to be paid thereout to complainant, on his discharging the mortgage of record; and that the sum so paid in should be deducted from the amount due on the policy. The decree further enjoined Aldrich from disposing of his claim on the policy, and enjoined the company from paying the amount in controversy to Aldrich, and also restrained Aldrich from prosecuting his claim against the company. Aldrich appealed.

The case raises the general question, whether there is any ground of equity to entitle Miller to intervene and claim that Aldrich shall be precluded from collecting and retaining so much of the insurance money as is equal to the mortgage, and if so, that the sum intercepted shall be devoted to his indemnity against the Paine note.

The circumstance that the naked lot has some value, is unimportant. The principle involved in the state of

facts presented is the same that it would be if the buildings, which have been swept away by the fire, had supplied the *entire value*.   As matter of security for the debt, the bare lot is of no practical consequence.   It is not worth enough to pay the necessary expense which would attend foreclosure, and there is no room for supposing that Aldrich would do any thing to avert that expense.

Let us, then, for the sake of convenience, suppose the buildings to have constituted the whole security for the mortgage, and to have formed the only subject of appreciable value embraced by the Chapman sale to Aldrich ; and then briefly recur to the leading facts of the case, and the construction claimed by Aldrich.

By this course we shall be able in a short way to exhibit the positions of the chief parties in a clear light, and see with more distinctness which side the rules of equity favor.

For the exclusive purpose of accommodating Chapman, and without a scintilla of personal advantage, or the hope of it, Miller joins with Chapman in the note to Paine, and in consideration of this, Chapman agrees to give him this mortgage on the buildings, and seeing the frailty of the security, he agrees and undertakes that the buildings shall be kept insured for Miller's benefit.   To carry out this undertaking, he gives the mortgage and obtains a policy for the first year of one thousand dollars, with a provision appointing the payment to Miller in case of loss, of an amount equal to the mortgage debt.   During the running of this policy, and whilst the agreement between Miller and Chapman respecting insurance is in force and binding in equity on Chapman, the latter sells the buildings to Aldrich, who knows of the mortgage, and buys subject to it, and agrees to pay it, and has the amount of it allowed to him in the trade, as so much cash.

The old policy, intended under the agreement as a guard to the mortgage, and so framed as to substitute money for the buildings in the event of their burning, and afford an

equivalent to which the mortgage would equitably attach, is still standing. The part of the agreement which required Chapman to keep the buildings insured for Miller's benefit is also standing and in force in equity against Chapman. But behind Miller's back, Chapman and Aldrich agree upon a course which is in violation of this stipulation, and includes the sacrifice of all Miller's rights under it, without his assent or knowledge. They agree that the outstanding policy shall be put out of the way, and that Aldrich shall so be in a situation to take out, and shall be allowed to take out a new policy in his own name and containing no provision in favor of Miller. This is the actual construction which Aldrich himself puts upon the transaction.

Aldrich has bought subject to the mortgage, and has agreed to pay it. He has talked with Chapman about the old policy. He now sees it, and handles it, and bargains about it. He agrees, in the first place, to take an assignment of it, and then unites with Chapman in the plan to get rid of it, and for taking one in its place in his own name and not incumbered by any provision in favor of Miller. To repeat: He is chargeable with notice of the contents of the mortgage. No one will question that. But he is also chargeable with full notice of the old policy, and with the provision in it for Miller's benefit as mortgagee of the very mortgage of which he has the benefit when paying Chapman the purchase price of the buildings.

Chapman disregards his obligation to Miller under the agreement in question, and Aldrich, with knowledge of the mortgage of which he gets the present benefit, and with knowledge of the policy and of the provision for Miller's security, and which points directly to the mortgage and to the existence of the agreement which caused such provision in the policy, unites with Chapman in the plan to ignore that agreement, to cancel the old policy and substitute a new one wholly in favor of Aldrich, and clear of any expression in favor of Miller.

31 MICH.—53.

Aldrich thus participates with Chapman in an act which violates Miller's rights, and an act, too, which, upon his construction, is to enrich him at Miller's expense and loss.

The buildings burn.    That which was to stand in place of the buildings in such an event to make good Miller's mortgage security, Aldrich claims the right to collect and appropriate as his own.    Nothing is to be left for Miller. The equivalent for the mortgage security is to be lost to him and wholly gained by Aldrich, and for this, Aldrich has really paid nothing.    It is to be a clear speculation, so far as he is concerned, and this is to result from the breach of the old agreement between Chapman and Miller, and which was brought about by the combined acts and management of Chapman and Aldrich.

Now, if Aldrich has acted fraudulently against Miller in the matter, he ought not to be a gainer thereby at Miller's expense; for it is a general principle of equity, that no one shall obtain a benefit by his own fraud and wrong.

If he acted in ignorance of what he ought to have known was his equitable duty, he ought not to profit by the act, to the loss, detriment and injury of Miller; it being a maxim, that he who ignorantly does an injury shall knowingly make reparation.    As the case is shaped, Aldrich is seeking to make a gain, whilst Miller is struggling to avoid a loss, and in such a contest the court is justified in making the most favorable construction for the party endeavoring to escape loss.—*Letcher v. Woodson, 1 Brock., 212.*

If there had been no agreement between Miller and Chapman, for keeping the buildings insured for Miller's benefit, or supposing such an agreement, if Aldrich, without being aware of facts to charge him with notice of it, had obtained insurance exclusively for himself as owner of the equity of redemption, the case would have stood on different ground entirely.

But here there was the agreement to mortgage and keep the buildings insured for Miller's security, and not only so,

there were acts in part performance of it; a mortgage was given, and a policy was actually running at the time, which had been made on the strength of it; and if Aldrich was in fact unaware of the agreement, he was at least aware of circumstances sufficient to fix him with notice of it, and to affect him with bad faith in participating in a transaction formulated to deprive Miller of all right under it, and to give Aldrich the same advantage he would have been entitled to if no such agreement or policy had existed.—*Kennedy v. Green, 3 Myl. & K., 699; Reed v. Gannon, 50 N. Y., 345; Kellogg v. Smith, 26 N. Y., 18; Curdy v. Huntington, 42 N. Y., 334.*

Chapman had bound himself to afford Miller security supplementary to and connected with the mortgage. The mode agreed on had reference to the mortgaged buildings, and was to be of a nature to keep the mortgaged property itself so far intact as a means of security as to perpetuate the safety of the mortgagee's interest in case the buildings should burn.

This stipulation was in equity a sort of adjunct to the mortgage, and was binding on Chapman and on all others in his shoes with notice.

When he sold to Aldrich he does not appear to have kept any insurable interest, or to have been in a situation to personally effect insurance to any amount, and Aldrich appears to have taken his place, and to have occupied a situation which required him to recognize and respect the term of the agreement intended to fortify Miller's security under the mortgage. Instead, however, of recognizing and respecting it, he joined in the transaction to set it aside, and to so place himself that if the mortgaged property should burn he might put the mortgage money, of which he had already received the benefit, in his own pocket, and leave Miller a remediless loser to that amount.

As before intimated, I think equity will not sanction this; but will consider that the agreement between Chapman and Miller, in regard to insurance, was enforceable by

the latter against the former, and that Aldrich's position exposes him to a similar remedy in favor of Miller.—*Mechanics' Bank of Alexandria v. Seton, 1 Pet., 299 ; Hunt. v. Rousmainer, 8 Wheat., 174 ; Edwards v. The Grand Junction R. W. Co., 1 Myl. & C., 650 ; Wilkinson v. Torkington, 2 Younge & C., Exc., 726 ; Watkins v. Maule, 2 Jacob & W., 237–242 ; Pritchard v. Ovey, 1 Jacob & W., 396 ; Powell v. Smith, L. R., 14 Eq. Cas., 85, 3 Eng., 64 ; Ashton v. Corrigan, L. R., 13 Eq. Cas., 76, 1 Eng., 565 ; Hermann v. Hodges, L. R., 16 Eq., 18, 6 Eng., 615 ; Perkins v. Washington Ins. Co., 4 Cow., 645 ; Mead v. Davison, 3 A. & E., 307, pr. Lord Denman ; Carpenter v. Mutual Ins. Co., 4 Sandf. Ch., 408 ; Sandford v. Trust Fire Ins. Co., 11 Paige, 547 ; Trustees of Frst Baptist Church v. Brooklyn Fire Ins. Co., 18 Barb., 69 ; Hamilton v. Lycoming Ins. Co., 5 Barr, 339 ; Tayloe v. Merchants' Fire Ins. Co., 9 How., 405 ; Commercial Mut. Marine Ins. Co. v. Union Mutual Ins. Co., 19 How., 318 ; Chamberlain v. Blue, 6 Blackf., 491 ; Rider v. Pond, 19 N. Y., 262 ; Fry on Spef. Per., sections 135 to 140, inclusive ; Peer v. Kean, 14 Mich., 354 ; Hosley v. Holmes, 27 Mich., 416.*

In view of all the facts, then, the course taken by Aldrich in concert with Chapman was either actually fraudulent as against Miller, or at least constructively so, and he ought not to be permitted to . turn the transaction to his clear advantage, and to Miller's corresponding loss.

The stipulation made by Chapman to Miller respecting insurance, as before stated, was, in the light of equity, as between them, a part of the security belonging to Miller, and in substance an appendix of the mortgage, and in my judgment, the principles of the court not only permit but require us to sustain it as against Aldrich, and to regard the second policy as a substitute for the first, and treat Aldrich as Miller's trustee of so much of it as would have been devoted to the mortgage interest if the agreement had in good faith been observed.—*Wilson v. Mason, 1 Cranch, 45, 100 ; Story Eq. J., § 1265.*

Strictly speaking, Chapman should have been made a party to the bill, but as the litigation seems to have proceeded without any timely and specific objection on that ground, and as he was made a witness, and testified fully, and the proper relief is quite practicable without him, there is no propriety in throwing out the case for such a reason, after the considerable delay and expense which have occurred. Such a result would be a serious prejudice to both Miller and Aldrich, since it would settle nothing in regard to the merits, and would leave the whole ground to be fought over again. It is quite probable that the decree in its present form is practically well enough; but considering the theory of the case, and the circumstances, I think it should be modified as suggested by my brother Cooley.