## AMERICAN HARROW COMPANY v. DOLVIN.

1. The court erred in refusing to rule out evidence which tended to vary and contradict the terms of the written contract between the parties.
2. The court further erred in charging the jury upon the hypothesis that such evidence had been properly admitted and should. be considered by them in arriving at their verdict.

Submitted November 26, —Decided December 10, 1903.

Complaint. Before Judge Holden. Greene superior court. July 22, 1903.

*James B. Park*, for plaintiff.
*Samuel H. Sibley* and *George A. Merritt*, for defendant.

TURNER, J. The American Harrow Company, a corporation under the laws of Michigan, brought a suit in the superior court of Greene county against J. G. Dolvin, on a promissory note for the sum of $934.18, besides interest, etc. In the copy note appended to the petition appeared the following provision : "This is given in settlement of old note," with a specification of the note by number, etc. To this action Dolvin filed various pleas, denying the alleged indebtedness, averring that there was fraud in the procurement of the note, etc. His defense of fraud was stricken on demurrer, and to this ruling of the court he filed no exceptions, so far as the record before us discloses. In the original plea filed by Dolvin, he set up the claim that the note sued on grew out of an agreement between himself and the plaintiff company, to the effect that he should sell harrows for said company and that said company was to pay him the sum of fifteen dollars for every harrow so sold ; that, under this agreement, he sold thirty harrows,

for which service the company owed him the sum of $450; that at the request of the company, he paid freight on a lot of its harrows, amounting to $158; and that the company therefore owed him the sum of $608, which amount he prayed should be allowed as a set-off against the plaintiff's demand against him, and also prayed a judgment against the plaintiff for the amount of said items and interest. The defendant further pleaded, by way of an amendment to his answer, that the note sued on did not represent the contract entered into by him with the plaintiff, but that the real contract between them was that defendant should sell for said company certain farm implements to responsible parties for a set price of $45, taking notes which were to be sent to the plaintiff; that fifty machines were to be sent to him by the company at first, and he was to account therefor at the end of the season, returning those unsold and accounting for the remainder in notes, receiving his commission, as aforesaid, thereout; that the agent of the company making said contract for it stated that plaintiff kept no books, but took, as security from its agents to sell, notes which stood for the machines shipped, giving a receipt against said notes to protect said agents; that this was done in this case, and that the note sued on was not given in consideration of the purchase of any machines, but only as security for defendant's accounting, as aforesaid; that he had accounted to plaintiff for all machines so shipped him, having sent to the company notes for all machines sold and having offered to deliver all machines unsold before the suing of this note, and still offers to return said machines and to account fully in this behalf; that the note originally given, referred to in the note sued on, was given as aforesaid, and the note sued on was given for the purpose of standing as security for a settlement agreed on of said contract, as thus understood by defendant, his understanding thereof being adopted and agreed on in said settlement, as above set out.

In this amendment to the defendant's answer the execution and ownership of the note sued on were admitted, and he assumed the burden of proving his defense. The defendant also filed a plea in which he alleged that the note sued on was merely intended to stand as security for a final settlement of said business; that the plaintiff, by its agent, agreed to pay the freight and commissions aforesaid and to receive back the unsold machines, in complete

settlement and satisfaction of the prior contract and note, and to terminate the relations between the parties; that the note sued on was given and also a receipt given by plaintiff's agent solely on the understanding and for the consideration of standing as a. security for the settlement so agreed on, and not for the consideration of any compromise and settlement of a money indebtedness; that defendant has always offered and is ready to do and perform all his part of said settlement, and is entitled to a surrender of said note and to payment of his claims for freight and commissions.

To the foregoing pleas and answers demurrers were filed by the plaintiff, though their precise terms can not be ascertained from the transcript of the record; but it is recited in the bill of exceptions that the plaintiff " demurred to the pleas of the defendant and moved to dismiss the same upon the ground that the pleas set up no valid defense to the note sued on, which motion the court overruled, to which ruling the plaintiff excepted and now assigns as error." The trial having taken place in February, and the bill of exceptions having been signed by the judge in July, this exception is too late and can not be considered.

During the trial of the case the defendant introduced a note, numbered "397 F," for $1,513, signed by John G. Dolvin, payable to the American Harrow Company, dated February 17, 1900, due on or before January 1, 1901, payable at the bank of E. A. Copeland, Greensboro, Ga., with interest at a specified rate per annum, containing a waiver of homestead and exemptions, and also the following stipulation: " It is agreed by the maker that no promise or contract outside this note will be recognized, or in any way hinder its payment in full at maturity."

The plaintiff introduced in evidence a contract between the defendant and the plaintiff, on the back of which were the following endorsements: "No. 791. Season of 1900. Name, J. G. Dolvin. P. O., Siloam. Shipping Point, Siloam. Railroad, Branch Ga. Ry. County, Greene. State, Ga. Salesman, F. P. Webster. The amount of frt. charges to be paid by J. G. Dolvin and same to be placed to his credit on note." The contract was as follows:

" This agreement, made this 17th day of Feb., A. D. 1900, between the American Harrow Company, of Detroit, Michigan, the first party herein, and John G. Dolvin, doing business under the

name of John G. Dolvin, at Siloam, County of Greene, State of Georgia, the second party herein, witnesseth as follows : Said first party agrees:   1st. That it will, between Feb. 17th, 1900, and April 15th, 1900, manufacture for and deliver, and does hereby sell, to said second party, on board cars at Detroit, Mich., the goods described, at the prices and terms and in the quantities specified on pages 4, 5, and 6 herein, which are made a part hereof.   2nd. To give second party the right to sell said goods in the usual course of retail trade, during the season of 1900, in the following territory and tributary thereto, viz., Greene, Hancock, and Taliaferro counties.   3rd. That its goods shall be well made and of good material.   Said second party agrees :   1st. To purchase said goods of said first party, and to pay it therefor (and for all goods subsequently ordered) the amount agreed upon at the time and according to the terms indicated.   2d. To receive said goods on such delivery, and to pay all freight and charges thereon.   3d. That no order shall be countermanded except at the option of the first party, and then only upon payment of 15% of the amount of the order, to liquidate damages sustained thereby.   4th. That first party shall not be held responsible for delay in shipping, caused by fire, strikes, or other causes beyond its control.   It is understood and agreed :   1st. That this contract shall not be binding on the first party until accepted at its home office in Detroit, but shall be binding on both parties when first party mails at Detroit written notice of its acceptance, addressed to the second party. 2d. That no agreements, conditions, or stipulations, verbal or otherwise, save those mentioned in this contract, shall be recognized. In witness whereof, said parties have hereunto affixed their signatures, the day and year above mentioned.

[Signed]   American Harrow Company, by F. P. Webster.
Accept : O. R. B."                    John G. Dolvin.

Pages 4, 5, and 6, referred to as forming part of the contract, contained a list of the articles manufactured by the American Harrow Company, and the following were designated as embraced within the contract:   "Fifty Arch Lever Cultivator, with center section, steel axle, wood wheels, 15 tooth, Patent Rev. Points, $30.00; One Grain Seeder Attachment, $13.00.   Besides the regular equipment, four sweeps to be furnished with each machine. Terms : payable January 1st, 1901.   Or, if paid before maturity,

with a discount of 1% per month for each month intervening between time of payment and maturity, not counting fractions of a month." A letter from plaintiff was also introduced, showing acceptance of the foregoing contract in pursurance of its terms. Certain letters were also introducted by the plaintiff, some by the defendant to the plaintiff and others by the plaintiff to the defendant, the genuineness of three of them purporting to have been written by the defendant being denied by him. This correspondence was offered in evidence for the purpose of showing that the defendant recognized the plaintiff's view of his obligation, except that in the last of the defendant's letters he asserted the view taken in his pleas. In addition to the documentary evidence above set forth, there was oral evidence introduced by both parties to the suit, the defendant testifying as a witness in his own behalf. The jury returned a verdict in his favor, and the plaintiff made a motion for a new trial, based on various grounds, which motion was overruled by the court, and the plaintiff excepted.

1. In one of the grounds of the motion for a new trial complaint was made that the court committed error in refusing to rule out certain testimony of the defendant, Dolvin, the objections made thereto being, (1) that as Webster, the company's agent, was dead, the defendant could not, under the law, " testify to any transactions or communications with the deceased agent;" and (2) the testimony objected to "varied the terms of the written contracts between the plaintiff and the defendant by adding to said contracts verbal conditions that varied the terms of the written contracts." In a note to this ground the judge says, " The court ruled out all conversations and transactions between Dolvin and Webster, except such as appeared to have been in presence of Champion and Mrs. Dolvin, and instructed the jury to disregard them." The testimony objected to was set forth in this ground of the motion for a new trial, and was as follows: " Webster was at my house one night in February, when Champion and my wife were present, and told me that the company had sent him there to make a deal with me. He got out his papers and told me he wanted to make an agreement with me for the American Harrow Company to handle their plows. I asked him how he wanted me to handle them, and he said he wanted me to sell them to good, responsible parties over the county, and furnish my

wagon and team. He said that he couldn't ship me less than a car-load, but would ship a car-load and give me $15.00 for every machine I sold. I said: 'I understand you will ship me fifty, and those I don't sell you will take back?' He said, 'Yes.' He wanted to make a contract with me to furnish my team and go out and work for so much salary, but I told him I couldn't do that. In making the deal with Mr. Webster he said: 'You will have to sign this note, but I will give you a receipt against the note.' He said: 'The Company doesn't keep any ledger in which to book these transactions.' Mr. Webster came back to my house in April, 1901. I told him that the parties that I had sold the machines to said that they were not worth anything, and that he would have to take them back. He said: 'Let's go and see some of these parties that have refused to pay for them.' Coming on back from Woodville, he told me he saw I couldn't do anything with the plows, and that they would have to take them back. He said: 'I'll turn your old note over to you; it is so scribbled on you can't tell anything about it, and you make a new note and sign it, and I will go down here below Macon and write you word where to ship the plows to.' I said: 'I will give you the note provided you give me a receipt against it;' and he gave me a receipt against the note. Webster told me that I would have to sell the machine for $45, which would be $30 for the company and $15 for me. My agreement with him was that I should handle them as his agent. The last note was taken in place of the first note. There was no compromise and settlement intended by it. I made a trade with the company on February 17th, 1900, by which they were to send me fifty harrows, and I was to try to sell them, with the understanding that they were to give me $15 for every one I sold. I had a written contract with them. Web-. ster went to Woodville with me and saw I couldn't do anything with the machines, and he told me he would send me a check for my trouble in selling those plows; $15 for each one and a check for the freight. That was the time I gave him this last note. When Webster said he would take back the plows and send me a check for those I had sold, that was coming from Woodville. That night, at my house, he told me he was going down below Macon, where his wagon teams were, and have me to ship them down there to him. That was on the 11th day of April, 1901.

That was before I gave this last note and this statement, and I wouldn't sign the note until he gave me a receipt against it. Webster told me he had to make a showing to the company; that they didn't keep any ledger at all."

In another ground of the motion for a new trial complaint was made that the court committed error in refusing, on motion of plaintiff's counsel, to rule out the following testimony of W. A. Champion: "I understood that Mr. Dolvin was to take the plows and sell them on a commission of $15 for every plow he sold. Mr. Dolvin didn't buy the plows. Mr. Webster told him that if he couldn't use them, he, Webster, would dispose of them and have him to ship them somewhere else. Mr. Dolvin then gave Mr. Webster this last note, after Mr. Webster gave him this receipt against the note." The ground upon which the court was asked to rule out this evidence was that it " was illegal, because it varied the terms of the written contracts between the plaintiff and the defendant by adding to said contracts verbal conditions at variance with the conditions of said written contracts."

The code provides: "Where any suit is instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation." Civil Code, § 5269, par. 3. This evidence of Dolvin related to " transactions and communications " which seem to have been had "solely " with Webster, the deceased agent. The presence of Dolvin's wife and Champion (who was Dolvins's brother-in-law) would hardly remove the reason of the exclusionary rule. In the case of the *Merchants Bank* v. *Demere*, 92 *Ga.* 735, it was held that Demere could not testify as to a conversation he had with the president of the bank, it being admitted that the latter was dead, although Demere testified that the conversation was had in the presence of certain clerks and directors of the bank, but that he did not know that any of them heard and knew what was said.

Webster, on the first occasion (that is, in February, 1900) was at Dolvin's house for two days, and the meagre account which Champion gives of the conversation indicates that he heard very little of what was said, or that he has a very poor memory. Does not the section of the code cited imply that besides the deceased agent of the corporation there should have been some other per-

son present, related in some way to the corporation, before the opposite party would be competent to testify to the transactions or communications ? Such a person would be interested to remember what occurred favorably to the corporation; could aid the corporation as well as witnesses for the opposite side to develop the whole truth, and to expose mistakes and misstatements. Would the fact that Dolvin had his brother-in-law and his wife present, even if they heard all that passed, render Dolvin competent as a witness, when the opposite party is deprived by death or insanity of its only witness ? Such is not the rule when a transaction between natural persons is under investigation and one of the parties is dead.

But, without regard to the question of Dolvin's competency to testify as to transactions with the deceased agent, we think the court erred in refusing to exclude both his testimony and that of Champion, above set forth. When parties enter into an agreement and reduce it to writing, the law presumes that the writing contains the whole contract. Except for fraud, accident, or mistake, parol evidence can not be received to vary the terms of a valid written contract. Even if there were no written contract in this case except the note sued on, which is absolute and unconditional on its face and recites that it is in settlement of an old note, parol evidence could not be admitted to contradict or vary its terms. *Lunsford* v. *Malsby*, 101 *Ga.* 39 (2). The Chief Justice, in the case of *Stapleton* v. *Monroe*, 111 *Ga.* 848, said: "An absolute and unconditional promissory note can not be so changed by evidence of a contemporaneous parol agreement as to engraft upon it a condition." See also *Walton Guano Co.* v. *Copelan*, 112 *Ga.* 319; *Brewer* v. *Grogan*, 116 *Ga.* 60; *Heard* v. *Tappan*, 116 *Ga.* 930, 934 (3); *Edison Electric Co.* v. *Blount*, 96 *Ga.* 272. Besides these cases, which are taken from the brief of the counsel for the plaintiff in error on this point, citations of authorities to the same effect might be indefinitely multiplied. The view just presented is greatly strengthened by the consideration that by the original contract, as well as by the first note (which is expressly referred to in the note sued on), all stipulations and conditions outside of the writings were expressly excluded. Certainly a man who signs such contracts will be conclusively bound by them, unless by his

pleadings and proofs he clearly brings his case within the recognized exceptions.

But it is contended that the acceptance by the plaintiff of the note sued upon, and procured from Dolvin by Webster, is a ratification of the contemporaneous agreement signed by Webster for the plaintiff.    That paper, introduced in evidence by the defendant, was as follows : "I agree to receipt J. G. Dolvin for note given me to-day, this day Apr. 11, 1901, for $934.18 note due Jan. 1st, 1902.    [Signed] For American Harrow Co., By F. P. Webster.    Witness: W. A. Champion."    It is also claimed that this paper is ambiguous, and that it may be explained by evidence showing that the note does not mean what it says.    The paper on its face appears to be a simple and harmless undertaking to receipt for this note.    If it means more, there is nothing in its terms to indicate the ulterior meaning.    The court can not create an ambiguity by resorting to parol evidence in order that it may be explained by similar testimony.    *Maxwell* v. *Hoppie,* 70  *Ga.* 163 (3).    This case follows the opinion of Judge Warner in *Hill* v. *Felton,* 47 *Ga.* 470.    But whatever this paper means, was it ratified by the plaintiff ?    In the case of *Hodnett* v. *Tatum,* 9 *Ga.* 70, it appeared that Tatum had a promissory note against Hodnett, which Tatum gave to an agent to collect.    The agent received in payment depreciated bills and turned them over to Tatum.    Tatum objected to receiving the money at par, and the agent insisting that it should be returned to Hodnett, Tatum refused to do so and entered it on the note as received at ten per cent. discount.    On a suit for the balance appearing due on the note, this court held that " When a principal, with a knowledge of all the facts, adopts the act of his agent, he can not afterwards impeach his conduct."    In the case of *State* v. *Southern R.,* 70 *Ga.* 12 (3a), it is held: "When the fact of agency is to be proved by the subsequent ratification and the adoption of the act by the principal, there must be evidence of previous knowledge on the part of the principal of all the material facts.    If the material facts be either suppressed or unknown, the ratification is invalid."    The ratification was claimed to have resulted from the receipt of money.

In the case of *DeVaughn* v. *McLeroy,* 82 *Ga.* 700, it was insisted that some of the parties had ratified an arbitration and award, one by suing out execution upon the award and the trans-

fer of the execution, and the others by receiving their shares of the money awarded to them.    This court held:    "A ratification implies knowledge.    Therefore, to bind a person by a ratification of an illegal or void act, it must be shown that such person had full knowledge, at the time of the alleged ratification, of the facts which make such act illegal or void."    See also *McLean* v. *Clark*, 47 *Ga.* 26 (latter part of par. 14), cited by the present Chief Justice in the foregoing decision.

It does not appear that the managers of the plaintiff had any knowledge of the existence of this paper until informed of it by their counsel, or of the parol stipulation sought to be engrafted on the settlement until they learned it from the contentions in this case.    And from what follows, it does not seem that they had any reason to suspect the existence of any purpose or intention to nullify the settlement.    But whether this agreement to receipt for the note, so harmless on its face, was intended by either party or by both as a device to secure some undisclosed advantage, it is also to be remembered that another cotemporaneous writing, signed by Dolvin, was introduced in evidence by the plaintiff, giving an itemized statement of the settlement had of the old note and of the credits allowed, showing the precise balance for which the new note was given ; and beneath the statement is the following, plainly appearing in print:    "P. O., Siloam, Ga. 4/11/01.    Mess. American Harrow Company, Detroit, Mich.    Gentlemen :    The above is a correct statement of the full and final settlement of my note, as made with your Mr. F. P. Webster to-day.    I have received my note, and have no further claims of any kind against you. [Signed] J. G. Dolvin."    Assuming that Mr. Dolvin was competent to contract, this last written assurance ought to be conclusive on the question under discussion.    There is evidently no ambiguity in this document.

2.    It was also complained in the motion for a new trial that the court below committed error in charging the jury as follows: " I charge you, if you believe that Webster, acting in behalf of the plaintiff, took from the defendant the note sued on as a part of a contract of settlement, such as is set up in the defendant's plea, I charge you that though Webster may not have [had] any authority to make the contract referred to, yet if he did make it, the plaintiff could not accept a note and ratify Webster's act in taking

it without ratifying his whole contract.     One can not ratify the act of his agent in part and repudiate it in part.   He must ratify all or none of the transaction.  I charge you that [if it was] agreed at the time the note . . sued on was executed that the defendant, Dolvin, should keep the machines until Webster notified him to what place to ship them, and if the defendant gave to Webster a note payable to the company, and that Webster was to hold the note, or the company was to hold the note, as collateral security for the machines that Dolvin had in his possession ; and if it was agreed when Dolvin shipped the machines the note was to be cancelled and returned to Dolvin, and if Webster or the company has never notified Dolvin where to ship the machines, and if he has them on hand now to be delivered to the company at any time, or shipped to such place as they may designate, then I charge you the plaintiff is not entitled to recover in this case, and you should find a verdict in favor of the defendant."     It is insisted that this charge was erroneous, for the reason that it in effect allowed the defendant to set up a verbal contract which varied the terms of the written contract by adding to the same.

For the reasons given and upon the authorities hereinbefore cited in considering the refusal of the court to exclude illegal evidence, we think this charge was erroneous.

*Judgment reversed.    All the Justices concur.*