DOLVIN *v.* AMERICAN HARROW COMPANY.

1. If upon demurrer to a plea the court has decided as to the merits of the defense thus sought to be set up, and stricken the plea, the judgment is conclusive, if the same or substantially the same plea is again offered. But if in rendering judgment upon a demurrer to the plea the court does not decide as to its merits, but strikes it on a ground of special demurrer that there is a mere general allegation of fraud without setting out any facts which constitute such fraud, this does not become res adjudicata so as to prevent a complete plea of fraud, with proper allegations, from being offered by way of amendment to the answer.

2. The trial court not having passed upon the merits of the plea of fraud offered by way of amendment, but having rejected it on the ground that it was res adjudicata, this court expresses no opinion as to its merits.

3. An honest mistake of law, as to the effect of an instrument, on the part of both contracting parties, when such mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity, or under equitable pleadings, in a proper case.

4. The plea of mutual mistake, offered in this case, as to the effect of the instrument given by the agent of the payee of a note to the maker thereof at the time when it was made, by which the payee agreed "to receipt J. G. Dolvin [the maker] for note given me to-day," was sufficient to withstand an objection in the nature of a general demurrer, although the plea may have contained certain allegations regarding and references to other papers and transactions, which did not constitute a good plea of mutual mistake as to them.

5. Ratification involves knowledge of the facts, on the part of the person ratifying, at the time when the ratification is made; but if an agent exceeds his authority, the principal can not ratify in part and repudiate in part; he must adopt either the whole or none.

Argued February 23,—Decided May 18, 1906.

Rehearing denied July 5, 1906.

Complaint.　　Before Judge Lewis.　　Greene superior court. May 1, 1905.

The American Harrow Company brought suit against J. G. Dolvin on a promissory note which stated that "This is given in settlement of old note No. 3975." The third paragraph of the petition alleged, that the note was past due, that the defendant refused to pay it, and that judgment was prayed for the amount due. The third paragraph of the answer was as follows: "In answer to paragraph three of said petition defendant says, that there was fraud in the procurement of said note; and there was never any consideration to support the same; defendant gives this as his

reason for refusing to pay the said note." The sixth paragraph of the answer alleged that the note grew out of an agreement between the plaintiff and the defendant by which the latter was to sell certain harrows for the former; that he sold some of them and paid certain freight, which amounts he pleaded as a set-off. A demurrer to the answer contained the following, among other grounds: "Paragraph 3. The fraud alleged is not set-forth as required by law, and said paragraph sets forth no facts as to the consideration." The other paragraph stated above was also demurred to as lacking in specification. An amendment was made to the answer, which alleged that the defendant was to sell harrows for the plaintiff, taking notes and sending them to the plaintiff and accounting at the end of the season, returning unsold harrows and receiving commission; that the agent making the contract stated that the plaintiff kept no books, but took as security, from its agents to sell, notes which stood for the machines shipped, giving a receipt against said notes to protect the agent; that this was done in the present case, and the note was not in consideration of the purchase of any machines, but only as security for defendant's accounting; that he did account for the machines shipped, and sent the notes received for all which were sold, and offered to deliver to them all the machines remaining unsold; that the note sued on was given for the purpose of standing as security for a settlement agreed on as thus understood by defendant, which was adopted and agreed upon in the settlement; that a receipt was given by the plaintiff's agent solely on the understanding and for the consideration that the note stood as a security for the settlement, and not as a compromise and settlement of a money indebtedness; that he has always offered to perform all of his part of the settlement, and is entitled to a surrender of the note and the payment of his claim for freight and commissions. No other demurrer appears in the record, but on that stated above the court passed the following order: "The demurrer to the original answer and to this amendment is overruled, except as to so much of the plea as attempts to set up fraud, which is stricken." After a trial the case was brought to this court and a reversal had. 119 *Ga.* 186. When the case again came on for trial, the defendant tendered an amendment striking the former amendment to his plea, and in lieu thereof alleged, in brief, as follows: He admits the execution and

ownership of the note sued on, and assumes the burden of proof. About a year before the signing of this note a salesman for the plaintiff entered into an agreement with defendant, whereby, as defendant understood, he was to sell certain harrows manufactured by the plaintiff on commission. Under this arrangement the defendant authorized the plaintiff to ship out fifty harrows, on which he paid freight amounting to $158. He sold thirty of them, and became entitled to a commission of $450. The remaining twenty were never unpacked. The harrows were not reasonably suited for the purpose intended, were totally unfit for such uses, and were worthless. The purchasers refused to pay for them and returned them to defendant for the plaintiff. The notes taken for them were defeasible. The original note given by the defendant, while absolute on its face, did not truly represent the transaction, but was signed at the time on the representation of the agent that the plaintiff kept no book accounts and took such notes as collateral security for goods shipped out on consignment for sale. If the note and papers have a different legal purport, it was the result of a mistake of the parties as to their legal effect; or, if not a mistake on the part of the agent, it was a wilful and fraudulent scheme to entrap the defendant into giving a legal evidence of a sale when no sale was intended. If the first transaction amounted to a sale to the defendant, he had a complete defense of failure of consideration, which was known to the plaintiff's agent, and that note would have been entirely uncollectible. The agent agreed with defendant upon a settlement of the transaction represented by the first note. The defendant had already paid the freight and remitted such collections as had been made upon sales, and these were entered on the first note. The notes taken from customers were in the hands of the plaintiff, or were placed in bank, by its instructions, for collection, and were not in defendant's possession. The agent represented that he could not then receive back the harrows, because he did not know where to have them shipped, and stated that he had traveling salesmen in south Georgia, and that he would later notify defendant where to ship such harrows. For this reason the settlement was not then closed; but the agent, desiring a note as a security for an accounting by defendant under this settlement, until it should be consummated, and representing that the old note was too much written upon to be intelligible,

proposed to deduct the money payments from the value of the harrows shipped, and take a new note for the amount thus unaccounted for, until the settlement should be carried out. The defendant agreed to sign this, but required of the agent a written showing for his own protection against the papers which he signed. The agent thereupon wrote, signed, and delivered an instrument as follows: "I agree to receipt J. G. Dolvin for note given me to-day, April 11, 1901, for $934.18, note due January 1st, 1902. American Harrow Company, by F. P. Webster." This instrument was intended by the parties thereto to signify an agreement on the part of the plaintiff, through its agent, to receipt for and cancel the obligation represented by the new note, upon compliance by the defendant with his agreement to deliver up the unsold harrows and account for those sold as above stated. It was drawn by the plaintiff's agent. This defendant was unlearned in the law, and the omission of apt words more fully to express said meaning was the result of accident and due to a mistake of both parties. The instrument as it stands, by mistake of law on the part of the draftsman and of the parties, does not fulfil, but violates in its operation, the real contract of the parties, it being supposed to be efficient to secure the defendant his rights under the settlement as against the other papers signed by him. The plaintiff's agent had theretofore acted with apparent fairness, had conceded all that the defendant claimed as to his rights in the settlement, and had won his confidence. If he did not share in the alleged mistakes, then his conduct throughout was in pursuance of a scheme of fraud by which he saw that the original note could not be enforced against a plea of total failure of consideration, and led the defendant to make a new note with the purpose to cause him to waive this defense and to become absolutely bound by the terms of the writings to pay a debt that he never owed, and by pretenses of fairness and concessions, and by proffering to him a legally meaningless obligation, lured him into signing the paper sued on, intending to deprive him of his just defenses and to trap him into the assumption of an obligation to pay for worthless articles that he had never bought. The agent was authorized to make the settlement with defendant; but if not so, he undertook to act for the plaintiff, received the note sued on and the other writing then signed by the defendant, and signed the instrument above set out, all as a part of one

transaction, namely, the settlement.  Plaintiff can not ratify the acts of such agent by suing on the note and claiming that the defenses to the old note are waived, without ratifying the whole transaction.  It must either accept the entire transaction made in its behalf or must repudiate the whole, and stand upon its original note, subject to such defenses as the defendant had thereto.  To disarm the defendant of his defenses to the first note by a settlement thereof, and then to adopt the settlement only in so far as it is favorable to the plaintiff, would be to commit a fraud.  He prayed that the note and the instrument of writing referred to be declared by mistake not to represent truly the contract of the parties, and that under the true contract the note is unenforceable, the defendant having, prior to the institution of the suit, tendered, and still tendering all the money collected on the harrows and all the notes taken therefor, and all the harrows remaining unsold. He also prayed that the note be declared to have been procured by fraud and to be null and void, and that he recover of the plaintiff $158 freight paid for its use, and the commission earned by him and lost without fault on his part.

Objection was made to this amendment, and the presiding judge passed an order declaring that the plea alleging fraud was res adjudicata, having been passed upon at a former term of the court, on a demurrer to the pleas in the case; and that the allegations in reference to accident and mistake were not sufficient in law to constitute any valid defense against the note sued on.  A verdict was directed for the plaintiff, and the defendant excepted.

*S. H. Sibley* and *G. A. Merritt,* for plaintiff in error.

*James B. & Noel P. Park,* contra.

LUMPKIN, J.  (After stating the foregoing facts.)

1-2.  "If upon demurrer the court has decided the merits of the cause, the judgment may be pleaded in bar of another suit for the same cause."  Civil Code, § 3744.  "If in rendering its judgment upon a demurrer to a petition the court does not decide upon the merits of the case, a judgment sustaining the demurrer and dismissing the action is not a bar to another proceeding for the same cause."  *Papworth* v. *Fitzgerald,* 111 *Ga.* 54.  This ruling was made in regard to the plaintiff's petition, but the same principle would govern in regard to a judgment upon a demurrer to a plea. If the judgment determines that the defense set up by the plea is

not good in law, this is an adjudication on the merits; and if substantially the same plea is offered again, it is res adjudicata. But if a plea is dismissed, not for lack of merit in the defense, but merely because the allegations are too general and wanting in specification, this is not an adjudication on the merits; and if a plea fully and distinctly alleging a good defense is offered, the matter is not res adjudicata. The difference between the result of a ruling on a declaration and a ruling on a plea is that, if a declaration is once dismissed for any cause, the case is out of court, and there is nothing to amend by; but the striking of one of several pleas does not take the case out of court, and there is still an opportunity for amendment, subject to the restrictions prescribed by the law in that regard, and the power of the court to impose terms, in proper cases. Civil Code, §§ 5097, 5057, 5068, 5101.

An examination of the statement of facts preceding this opinion will show that the original allegation of fraud was stricken because it was not set forth "as required by law" (which we understand to mean, without sufficient specification), and that the amendment offered was very different. Whether this amendment amounted to a good plea of fraud, or not, we express no opinion. The judge, in passing on its merits, might hold it to be a good plea, or he might hold that it made one of those not infrequent cases where the parties say one thing orally and another in the written contract, and fail to show any sufficient reason why they signed it as written. A man can not talk one way as to a contract, deliberately and knowingly sign it in writing another way, and expect the courts to relieve him of the results of his folly. As to this plea we say nothing, as the trial judge has not passed on the point. What we hold is that the matter was not res adjudicata by reason of the decision on the demurrer.

3. The presiding judge held that the allegations in reference to accident and mistake constituted no valid defense. In this we are unable to agree with him. "Mere ignorance of the law on the part of the party himself, where the facts are all known, and there is no misplaced confidence, and no artifice or deception or fraudulent practice is used by the other party, either to induce the mistake of law or to prevent its correction, will not authorize the intervention of equity." Civil Code, § 3978. But "an honest mistake

of the law as to the effect of an instrument on the part of both contracting parties, when such mistake operates as a gross injustice to one, and gives an unconscientious advantage to the other, may be relieved in equity." Civil Code, §3979. The distinction between ignorance of what the law is, and mutual mistake as to the effect of an instrument, may not always appear to be very clearly defined; but it is well settled that there is a distinction. *Culbreath* v. *Culbreath*, 7 *Ga.* 64; *Adair* v. *McDonald*, 42 *Ga.* 506; *Ham* v. *Parkerson*, 68 *Ga.* 830.

It was alleged in the proposed amendment, that facts existed which would have authorized the defendant to plead failure of consideration to the original note; that under the statement of the agent of the plaintiffs a new note was given, the result of which would be to destroy that plea (*Lunsford* v. *Malsby*, 101 *Ga.* 39); that this was only intended as a security until the settlement agreed on should be consummated; that the agent, for the purpose of giving him "a showing" for his protection, wrote, signed in the name of the plaintiff, by himself as agent, and delivered to defendant a paper which read, "I agree to receipt J. G. Dolvin for note given me to-day, April 11, 1901, for $934.18, note due January 1st, 1902;" that this was intended by both parties to signify an agreement on the part of the plaintiff to receipt for and cancel the obligation represented by the new note, upon compliance, with the agreement to deliver up the unsold harrows and account for those sold; that it was drawn by the agent and accepted by the defendant, who was unlearned in the law; and that the use of inapt words to accomplish that result, and the fact that the paper may not have that effect, was due to a mutual mistake. It was alleged that there was a mutual mistake as to the effect of this instrument; or, if not, that then there was a deliberate trick of the agent to destroy the defendant's legal defense to the first note and give him a meaningless paper under the guise of a protection against the last note.

It has been held that this paper was not ambiguous, and could not be explained by parol. *American Harrow Co.* v. *Dolvin*, 119 *Ga.* 186. But we can well understand how there might have been a mutual mistake in regard to its effect. To receive a note, and at the same time give, not an actual receipt for it, but an agreement to receipt for it, is unusual. What the parties may have meant we

do not say; but the plea of mutual mistake as to its effect was sufficient to withstand the objection urged against it in its entirety, in the nature of a general demurrer. In so far as the plea sought to allege that the original contract and note were not what they plainly purported to be, it was insufficient. Nor was it a sufficient plea as to other instruments beside the particular one pleaded, and as to which a mutual mistake of law was alleged. A mere general reference to "other blank forms" required to be signed is no proper plea of mutual mistake as to such instruments as may have thus been signed. No objection, however, appears to have been raised, or ruling made, as to any special part of the plea, but only to the whole. Let it be borne in mind also that for a plea of mutual mistake of law to prove a successful defense, the mistake must have been *mutual as to the effect of the instrument.* Mere general statements of omissions avail nothing. "An allegation of fraud, any more than an allegation of mistake, can not be used as a mere cover to bring in an oral agreement, contemporaneous with the note, and in variance with its terms." *Mansfield* v. *Barber,* 59 *Ga.* 854; *Smith* v. *Brooks,* 75 *Ga.* 356, 360.

4. It is a rule of law that ratification involves knowledge of the facts on the part of the person ratifying, at the time when the ratification is made. But it is also a rule that if an agent exceeds his authority, the principal can not ratify in part and repudiate in part; he must adopt either the whole or none. Civil Code, § 3021; *Hodnett* v. *Tatum,* 9 *Ga.* 70; *Howard* v. *Cassels,* 105 *Ga.* 412; *McLean* v. *Clark,* 47 *Ga.* 26. It was alleged in the proposed amendment, that the agent had authority to do what he did, but, if not, that his acts were ratified; that the settlement, the giving of the new note, and the signing of the paper were all parts of one transaction; and that the principal could not sue on the note so secured, claim that the defense to the old note had been thereby waived, and thus retain the note, continue to press the suit, and adopt the settlement by which it was obtained only so far as was favorable to him, and reject the balance. If the agent in fact did the acts alleged in the plea, and thus obtained the note, and this was in excess of his authority, upon discovery of the facts the principal could ratify the whole transaction or reject it. Even the suit on the note, if in ignorance of the facts, would perhaps not alone destroy the principal's right to act on discovery of them. But the

principal can not, after knowledge, ratify only so far as to retain the new note and continue to insist on its collection, with whatever advantages it might give, and yet repudiate as unauthorized all the rest of the agent's acts in the same transaction in which the note was obtained. Of course we do not mean to intimate that there was any fraud or mistake on the part of the agent, but merely to hold that the company can not, after knowledge of the facts, adopt his acts in part, if he exceeded his authority, and reject the balance. It would be in no worse position by ratification than if the agent had original authority to act for it; and the same contentions would be open to it; but if it ratifies, it is in no better position, and can not say that he was without authority in part.

In *Central Ry. Co.* v. *James,* 117 *Ga.* 834, it was said: "Where the owner of goods does not attend to their shipment in person, but procures another to act in his behalf, who does so without disclosing the name of his principal, the latter is bound by the terms of the contract which his agent makes with the carrier, to the same extent as though the contract was made by the principal in person, irrespective of the question whether the agent did or did not go outside of the authority with which he was vested. This is true for the all-sufficient reason that the principal can not take advantage of the contract made in his behalf without fully ratifying the act of his agent and becoming bound thereby." In *Southern Ry. Co.* v. *Parramore,* 119 *Ga.* 692, this statement was quoted approvingly. In *Supreme Conclave* v. *O'Connell,* 107 *Ga.* 101, it was said: "It is a well-recognized principle of law that a principal can take no benefit from a contract into which his agent has fraudulently induced a third party to enter; for the principal can not in part ratify and in part repudiate the act of his agent in effecting the contract." See also *Atlas Tack Co.* v. *Exchange Bank,* 111 *Ga.* 703; *Lamar* v. *Pearre,* 90 *Ga.* 378(5); *Lewis* v. *Equitable Mortgage Co.,* 94 *Ga.* 573(2). In *DeVaughn* v. *McLeroy,* 82 *Ga.* 700, it is said, that, "To bind a person by a ratification of an illegal or void act, it must be shown that such person had full knowledge, at the time of the alleged ratification, of the facts which make such act illegal or void." But on page 701, it is said: "It is true, if the award involves the interest of T. E. B. McLeroy in the land which his heirs are now suing for, that his suit for the money awarded to him in the adjustment of his money demand against

his guardian, and the transfer of the judgment which he obtained, would also be a ratification of the award upon his interest in the land; because it is a plain elementary principle of law, sustained by all authority, that he could not ratify what was advantageous to him and repudiate what was against his interests." See also *Harrell* v. *Terrell,* ante, 379. In Smith *v.* Hodson, 4 T. R. 211, it was held, that "If a bankrupt on the eve of his bankruptcy fraudulently deliver goods to one of his creditors, the assignees may disaffirm the contract and recover the value of the goods in trover: but if they bring assumpsit, they affirm the contract, and then the creditor may set off his debt." In Peters *v.* Ballister, 3 Pick. 495, 505, it was held, that where assumpsit was brought for the proceeds of a sale, if insisted on it ratified the sale; but if the plaintiff discovered his error, dismissed the action of assumpsit, and brought an action of trover for the property, this did not amount to a ratification. In the case before us apparently the principal must have known of the taking of the original note, and that the agent had it for settlement. It received the new note which the agent obtained, and brought suit on it. For other cases on the subject of ratification by suit, see also *Ingraham* v. *Barber,* 72 *Ga.* 158; *Singleton* v. *Bank of Monticello,* 113 *Ga.* 527; *Thomas* v. *Bagley,* 119 *Ga.* 780; Franklin *v.* Ezell, 33 Tenn. 497; Beidman *v.* Goodell, 56 Iowa, 592; Partridge *v.* White, 59 Me. 564; Reinhard on Agency, §123, and note; Osborn Co. *v.* Jordan, 52 Neb. 465; Eadie *v.* Ashbaugh, 44 Iowa, 519; Piano Mfg. Co. *v.* Millage, 14 S. D. 331; Joslin *v.* Miller, 14 Neb. 91; Sycamore Marsh Harvester Mfg. Co. *v.* Sturm, 13 Neb. 210; McKeighan *v.* Hopkins, 19 Neb. 33; 1 Clark and Skyles on Agency, §142 (*a*). In Johnston *v.* Milwaukee etc. Co., 49 Neb. 68(8), it was held as follows: "In the case at bar, plaintiff commenced an action of replevin to recover of the defendants certain cattle, the possession of which had been acquired by defendants through an alleged unauthorized sale of the cattle to them by an agent of plaintiff. The defendant's answer was a general denial. After the commencement of the action, but before the trial, the plaintiff gained knowledge that it had received the benefit of a portion of the proceeds of the unauthorized sale. Held, that it should then have returned to the defendants so much of the proceeds of the sale as had been applied to its benefit, or tendered such return; and its failure to do so would be a ratification of the sale,

which related back to its inception, and which could be proved on the trial by defendants under the general denial and without the filing on their part of a supplemental answer setting up such ratification." Farmers & Merchants Bank *v.* Farmers & Merchants etc., 49 Neb. 379.

The present case differs from that of *Graham* v. *Williams,* 114 *Ga.* 716, in which it was held that a plaintiff must have a cause of action when he brings suit, and that if the defendant has a complete defense at the time suit is brought, he can not be deprived thereof by a third party ratifying a deed which at the commencement of the suit was without binding force for want of such ratification. It also differs from *Baldwin Fertilizer Co.* v. *Thompson,* 106 *Ga.* 480, where the principal only received notes to the possession of which it was legally entitled regardless of the agreement of the agent.

If anything said in this opinion apparently is not in accord with what was said when the case was here before, it will readily be explained by noticing the difference in the questions then and now involved, and the points then and now decided. It was then sought to introduce parol evidence, on the ground that the paper given by the agent was ambiguous. This evidence was admitted, and the judge charged on the basis of it, including a charge on the subject of ratification. The rulings were that the evidence was erroneously admitted, and that the charge based on it was therefore also error. There was some discussion as to the evidence of ratification, and other evidence, but this is to be construed in reference to the questions involved. Here a plea was rejected, on objection in the nature of a demurrer, which plea alleged original authority, or, if none, ratification. We rule nothing as to the facts as they may appear from the evidence. This decision is based on the pleadings. As the error in the rulings in regard to the pleas was fundamental, it is needless to discuss further points in the trial.

*Judgment reversed. All the Justices concur.*