## DOLVIN v. AMERICAN HARROW COMPANY.

1. The rulings in striking portions of the plea, which were complained of in the exceptions pendente lite, were in accordance with a prior decision rendered by this court in this case.

2. In view of the fact that so much of the plea as sought to allege that the original note and contract executed by the defendant were not what they plainly purported to be had been stricken, the court properly excluded all evidence offered by defendant to show that such instruments had a meaning different from that therein expressed.

3. In a suit instituted by a corporation the defendant is not competent to testify in his own behalf to transactions or communications had by him solely with a deceased agent of the corporation, and the fact that such transactions or communications were had in the presence of third persons in no way connected with the corporation does not alter the rule.

4. Where the defendant to such a suit alleged in his plea that the agent of the corporation had authority to do a certain thing, it was not error to allow the officers of the corporation to testify that the agent had no such authority.

5. Where a batch of letters was objected to as a whole, on the ground of irrelevancy, and it appeared that some of the letters were relevant, the objection was not well taken.

6, 7. The instructions of the court as to mutual mistake of law, as to the character of evidence necessary to set up an oral agreement at variance with a written contract, and as to the presumption that a writing embodies the whole contract, were not open to the criticisms made thereon, when considered in connection with the other portions of the charge.

8, 9. The question as to whether the plaintiff ratified the alleged unauthorized acts of its agent was in the case, and the exceptions made to the charge on that subject were not meritorious.

10. A charge though not applicable to the issue involved in the case is not cause for a new trial, when it does not appear that the complaining party was probably hurt thereby.

11. A defendant against whom a verdict has been returned can not complain that the verdict is for a less amount than that which the plaintiff was entitled to recover if entitled to recover at all.

Argued February 8,—Decided August 15, 1908.

Complaint. Before Judge Lewis. Greene superior court. June 3, 1907.

*G. A. Merritt* and *S. H. Sibley,* for plaintiff in error.

*Park & Park,* contra.

FISH, C. J. This case has been before this court twice heretofore. 119 *Ga.* 186 (45 S. E. 983) ; 125 *Ga.* 699 (54 S. E. 706). The action is founded upon a promissory note dated April 11, 1901, and due on or before January 1, 1902, absolute and unconditional on its face, given by J. G. Dolvin to the American Harrow Company, for $934.18 principal, interest at eight per cent. per annum after maturity, and ten per cent. attorney's fees, if collected by suit. It contains the recital that "This is given in settlement of old note, No. 3975." At the time of the execution of this note, one Webster, an agent of the American Harrow Company, wrote, signed, and delivered to Dolvin, an instrument as follows: "I agree to receipt J. G. Dolvin for note given me to-day, April 11, 1901, for $934.18, note due January 1st, 1902. American Harrow Co., by F. P. Webster."

At the same time Dolvin gave to Webster, on a printed form furnished by the latter, the following statement:

"John G. Dolvin.

Debits.  Face of note .....................1,513.00

Interest accrued ......................... 21.56

                   1,534.56

Total debits .........................1,534.56

| Credits. | By endorsements | 587.38 |
| | " | 13.00 |
| | By new note due Jany. 1, 1902 | 934.56 |

"P. O. Siloam, Ga. 4/11, 1901.

"Mess. American Harrow Co., Detroit, Michigan.

"Gentlemen: The above is a correct statement of the full and final statement of my note as made with your Mr. F. P. Webster to-day. I have received my note, and have no further claims of any kind against you. Yours truly, J. G. Dolvin."

The plea of mutual mistake, which was held in 125 *Ga.* 699, at page 706, to be sufficient to withstand the objection, in the nature of a general demurrer, urged against it in its entirety, is there fully set forth (pp. 701, et seq.), and as it is quite lengthy, we will give only the following summary of it here. At the time of the execution of the note sued on and the signing of the other written instrument given on the same occasion (copies of which have just been set out), the defendant contended that his original note given to the plaintiff, and for which the note sued on purports to have been given in settlement, was never intended by the parties thereto to be an obligation on his part to pay the plaintiff an indebtedness, as he never purchased the machines for the purchase-price of which the note appeared to have been given, but had merely received them from the plaintiff to be sold by him on commission as plaintiff's agent; and that if the original note and contract, by reason of their terms, should be held to indicate a purchase by him of the machines, then he had a complete defense of failure of consideration of the note, as the machines had proved to be entirely unfit for the use for which they were intended. In view of these contentions of the defendant, Webster, plaintiff's agent, "agreed upon a settlement of the transactions represented by said first note," and desiring, as in the first transaction when the original note was given, to have defendant execute a note as security for a final accounting by defendant for the machines received by him and the proceeds of the sales of machines made by him, Webster proposed to take the note sued on as representing the value of the machines shipped to defendant, which was the amount of the old note, less the freight charges paid by defendant, and the aggregate amount of collections on sales made

by him and accounted for, such new note to stand merely as security for an accounting by defendant on final settlement. Defendant agreed to sign the new note, and also "other blank forms tendered him by said Webster, as required by the plaintiff to be signed in all such adjustments—by reason of their not keeping book accounts of such matters; but required of said Webster a written showing against the said papers for his own protection." Webster thereupon wrote and delivered to defendant the instrument agreeing to receipt him for the note, a copy of which we have set forth. This instrument "was intended by the parties thereto to signify an agreement on the part of plaintiff through its said agent, Webster, to receipt for and cancel the obligation represented by said new note, upon the defendant complying with his agreement to deliver up the unsold harrows, and account for those sold,

. . and the omission of apt words more fully to express said meaning was the result of accident, and was due to a mistake on the part of both of said parties; said instrument, as it stands, moreover, by a mistake of law on the part of the draughtsman and of the parties, does not fulfill, and violates in its operation, the real contract of the parties, it being supposed to be effective to secure to said defendant his rights under said settlement as against the other papers signed by him." Defendant tendered the unsold machines, the uncollected notes taken for purchases, and the amount of collections then unaccounted for, and prayed for a recovery of his commissions and the amount he had paid for freight.

The plaintiff moved "to strike that part of the amended answer which alleges and sets forth that the original contract and note were not what they plainly purported to be, and which attempts to explain or in any way modify said contract and note;" and "to strike, as being irrelevant, that part of the amended answer which refers to any blank form or forms." This motion was sustained, and the defendant excepted pendente lite. There was a verdict for the plaintiff "for amount sued upon, without interest or attorney's fees." The defendant assigns error upon his exceptions pendente lite and upon the judgment of the court overruling his motion for a new trial.

1. There is no merit in the exceptions pendente lite. As was said by Mr. Justice Lumpkin, in delivering the opinion when this case was last before this court (125 *Ga.* 706), in reference to this

identical plea: "In so far as the plea sought to allege that the original contract and note were not what they plainly purported to be, it was insufficient. Nor was it a sufficient plea as to other instruments beside the particular one pleaded, and as to which a mutual mistake of law was alleged. A mere general reference to 'other blank forms' required to be signed is no proper plea of mutual mistake as to such instruments as may have been thus signed."

2. The original transaction between Dolvin and the company being a sale by the company to him of the fifty harrows, as clearly shown by his absolute and unconditional note and the express terms of the written contract signed by both parties, the court properly excluded contemporaneous parol evidence to vary or contradict the terms of such writings. And in view of the fact that so much of the plea as sought to allege that the original note and contract were not what they plainly purported to be had been stricken, it was not error to refuse to permit Dolvin to testify: "The notes that were taken by [him] for these harrows were taken on a blank form sent him by the company. They had the amount $45.00 printed in the notes." Such evidence was plainly irrelevant. For the same reason, if for no other, the court properly refused to permit defendant to introduce "A letter from Mrs. Laura A. Printup to plaintiff, dated Nov. 5, 1900, refusing to pay for a harrow, and concluding with the statement, 'the harrow has been returned to your agent,' followed by a memorandum supposed to have been made by the plaintiff, 'J. G. Dolvin, our agent, Siloam, Ga.'"

3. The court also properly refused to permit Dolvin to testify as to transactions solely between himself and Webster, the deceased agent of the plaintiff corporation. "Where a suit is instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation." Civil Code, §5269 (3). The fact that such transactions were had in the presence of Dolvin's wife and brother-in-law, who were in no way connected with the company, did not make his testimony as to such transactions admissible. *American Harrow Co.* v. *Dolvin,* 119 *Ga.* 186 (45 S. E. 983); *Merchants Bank* v. *Demere,* 92 *Ga.* 735 (19 S. E. 38).

4. The court did not err in permitting certain officers of the plaintiff company to testify that "Webster had no authority or power to make a receipt of any kind. The surrender of the original note was the only receipt he had any authority to give for this note." Defendant, in his plea, had expressly averred that Webster did have authority to give such a receipt as defendant alleged the one actually given by Webster was intended by him and defendant to be.

5. A ground of the motion for a new trial was: "The court erred in admitting in evidence the letters passing between the plaintiff and defendant prior to the execution of the note sued on, the same having no reference to the transaction, and being in substance orders from Dolvin for various parts of machines, and requests for prompt shipment, and excuses for delay from the plaintiff, and in the fall advice about collecting the notes taken, said letters being about 22 in number and dated between Sept., 1899, and Dec., 1900, fully set out in the brief of evidence. The objection made at the time was that they were irrelevant, and tended to confuse and becloud the case. . . Copies of said letters are attached marked exhibit A." We find that all the letters are dated in 1900 and all of them, with the exception of one, bear date after the date of the original note executed by defendant. Some of them are not open to the objection of irrelevancy; and as the objection was to them as a whole, some being relevant, the objection was not well taken. It appears from letters written by defendant to plaintiff, on November 14 and 26, 1900, that he acknowledged owing the amount of his original note and requested the privilege of paying half of it at maturity, which was January 1, 1901, and the balance a year afterwards. We think this evidence was relevant, not on the point as to whether defendant was indebted to plaintiff on the original note, for that was not in issue on the trial, but as a circumstance, for the consideration of the jury, on the question as to whether defendant was really making, at the time the note sued on was given, the contentions set up in his plea, and which he alleged induced plaintiff's agent to enter into the settlement as defendant claimed it was made.

6. Another ground of the motion for a new trial was: "The court erred in charging as follows: 'If there was an honest mis-

take of law as to the legal effect of the note on the part of both
Dolvin and Webster, . . then equity would afford relief, and enforce
the note according to the real intention of the parties, and not
according to the legal effect of the note as appears from its unam-
biguous words. But the mistake must be the mistake of both
parties before the note would be enforced on the idea of mutual
mistake.'" The errors assigned were, (1) that this charge was
not adjusted to the case and was misleading and confusing, as
it was not the contention of defendant that there was any mistake
about the meaning or legal effect of the note, but the instrument
which defendant alleged to be the subject of mistake was the re-
ceipt; and (2) "If the court were correct in treating the note
as the instrument in contention, the real effect of defendant's con-
tention is to defeat and cancel it; and the mistake need not be
mutual to do that, but the mistake of one party only." Granting
that this excerpt from the charge, as set out in the motion, was not
technically accurate, we do not think it was calculated to mislead
and confuse the jury to the defendant's hurt, especially when con-
sidered in connection with other portions of the charge which
appear in the record. There was omitted from the instruction
excepted to, where the asterisks appear, the following language:
"growing out of an agreement and settlement which was the basis
of this note and receipt, if such a mistake might operate as a
gross injustice to Dolvin and give an unconscionable advantage to
the American Harrow Company." So the full charge given in
this connection was: "If there was an honest mistake of law as
to the legal effect of the note on the part of Dolvin and Webster,
growing out of an agreement and settlement which was the basis of
this note and receipt," etc. Moreover, the court in its charge fully
and fairly stated all the contentions of the defendant, and in doing
so instructed the jury that "Another writing executed at the time,
an agreement to receipt for the note, was signed by Webster as
agent of the plaintiff; and Dolvin contends that the note sued on
was the result of a mutual mistake on his part and on the part of
Webster as to the legal effect of the receipt as explanatory of the
note, that they both honestly believed, in view of the receipt given
and the agreement, that the note was to stand, under their agree-
ment, simply as a security for a final accounting for the machines,
and that Dolvin under the agreement was to return all machines

not sold and account for those sold." And near the conclusion of the charge the court said: "If you conclude from the evidence in this case that the note in suit does not speak the real contract made between the parties, that said note, in the light of the agreement and the receipt and all the evidence touching the transaction that culminated in the note sued on, was intended simply as a security or pledge for an accounting for the machines that were in the possession of Dolvin and the notes for those sold or money collected for same; and if you further conclude that such an agreement was the result of a mutual mistake of both Dolvin and Webster as to the legal effect of the receipt and note, . . then plaintiff can not recover, and your verdict should be for the defendant." The defendant's contention was that the note he gave and the "receipt" given by Webster did not express the real contract; and while he claimed that they were mutually mistaken as to the effect of the "receipt," and introduced parol evidence to show what he alleged was the true purpose of the "receipt" as understood by both parties, and in this way endeavored to prove what was the real contract between them, the mistake, if any were made, must have also entered into the note, as it was an absolute and unconditional promise to pay a given amount.

We are unable to perceive any merit in the second assignment of error upon the portion of the charge now under consideration. Counsel for plaintiff in error contend that, "under the facts of this case in any view, if this whole contract was the outcome of mistake on Dolvin's part only, he should have relief, and a charge to the contrary was error;" and the Civil Code, § 3982, is cited to support such contention. In that section it is said that equity may rescind or cancel a written contract "upon the ground of mistake of fact material to the contract of one party only." The question of mistake of fact was not involved in this case, and the charge under consideration expressly had reference alone to a mutual mistake of law.

7. The following charge was also excepted to: "The evidence to set up and enforce an oral agreement at variance with this note must be clear, plain, and unequivocal." The exception was that it was not adjusted to the case, because it omitted reference to the "receipt," and treated defendant's case as involving only an oral agreement to contradict the note. It was further alleged that

the following charge was error: "It is a presumption of law that you are to observe that when a writing in the shape of a contract is executed between the parties, as in the case of the note the subject-matter of this suit, that the writing embodies the entire con-tract, and covers and settles every dispute between the parties in reference to the subject-matter of the contract. This presumption holds good until it is overcome by evidence, and overcome by evidence that satisfies you that the note does not speak the contract that was really made, that there was an oral agreement as alleged, the result of mistake," etc. This was also excepted to on the ground that it was not adjusted to the case, because it treated the note alone as having been executed to witness the contract, whereas, undisputedly, there was also executed as equally a part of the writings this receipt, to which some meaning must be attached; and defendant did not seek, as this charge intimates, to contradict the note by a mere oral agreement, but to complement the note with the other writing, and to explain the purpose of this writing by the parol agreement. In view of what we have said in the sixth division of this opinion as to what the court charged in stating the contentions of the defendant, and other instructions given, and of the fact that the note was a part of the contract in question and was necessarily contradicted by the parol evidence, we do not think the charges now under discussion, when taken in connection with the whole charge on the subject of the contract of settlement, which was said by the court to be the basis of the note and "receipt," were calculated to be harmful to the defendant, and therefore they were not cause for a new trial.

8. Another instruction to the jury complained of was: "In order for the act of Webster to be binding on the American Harrow Company as their agent, the act must have been by authority of the American Harrow Company, or must have afterwards been ratified by the company with a full knowledge of all the facts. A suit instituted and continued after a full knowledge of the facts would amount to a ratification—with a full knowledge of the acts of the agent, in the transaction, the mutual mistake on the part of both parties, or frauds on the part of Webster, inducing an honest mistake on the part of Dolvin, such a mistake or fraud as under the law would authorize the enforcement of the agreement which resulted in the execution of the note." The excep-

tions were: (1) "Any charge submitting any issue of ratification was wholly inappropriate to this case, because as soon as a plea setting up the matters alluded to in the charge was filed, plaintiffs were put to the election of enforcing or abandoning the transaction, and the pressing of the issue to trial is in law an absolute ratification, independent of any further knowledge, and no right exists to question the agent's authority to do anything he did do." (2) The charge was error, "in that it asserted that it took both the institution and continuance of a suit with knowledge, to raise a ratification by implication in this way; whereas the law is that the mere continuance of it ratifies. This was harmful, because it appeared beyond dispute that this suit was begun in ignorance by the plaintiff." (3) The charge was error, "because it stated that the continuance of a suit was not ratification unless with full knowledge of all the facts, detailed them as applied to this case. All that is requisite is notice, not knowledge." A charge on the subject of ratification was certainly not inappropriate, as the defendant, by his plea, had distinctly raised that issue and evidence was submitted thereon; and when such plea was filed, the plaintiff was not bound to accept it as true and abandon the case, but of course, had the right to contend that what the defendant averred the plaintiff's agent did was never in fact done by the agent. There was some evidence submitted by the defendant which tended to show that the plaintiff had knowledge of the acts of its agent, Webster, prior to the institution of the suit, as defendant testified that he went to see plaintiff's attorney and exhibited the receipt to him before suit was entered, and gave him a copy thereof, and that the attorney said that he would send the copy to plaintiff, and would see that defendant would not be hurt. In view of this evidence, the court did not err in charging as to the institution and continuance of a suit, with full knowledge, amounting to a ratification; and it was said in this case (125 *Ga.* 706): "It is a rule of law that ratification involves knowledge of the facts on the part of the person ratifying, at the time when the ratification is made."

9. Complaint was also made that "The court erred in his charge, after stating what must appear as to the existence of mistake and fraud, in adding as a thing that must appear, 'and that the plaintiffs have by some act ratified the agreement.'" The vice

alleged was "that there was and could under the law be no issue for the jury as to ratification, and no such issue should have been submitted to them." As we have already said, an issue of ratification was raised by the pleadings and evidence.

10. Exception was also taken to the following charge: "In making a contract the parties are bound to exercise ordinary care and diligence to inform themselves as to any facts relating to the subject-matter of the contract, and equity will not relieve for any mistake that was solely the result of a want of such care and diligence." The exception was, that this charge "was not applicable to this case, and not adjusted thereto, because only a mistake of law was involved, and of the effect of an instrument." While this charge may not have been applicable in this case, yet it was a correct statement of a general principle of law; and as it applied alike to both parties, and it not appearing that it was probably harmful to the defendant, it was not cause for a new trial.

11. The last ground of the motion was: "The verdict is evidently not the result of an agreement by the jurors on the truth of the case, but a compromise of divergent views, in that it expressly finds against interest and attorney's fees, in the face of the charge of the court, which directed them that if they found for the plaintiff at all they would find the full amount sued for, including interest and attorney's fees." As was held in *Pullman Company* v. *Schaffner,* 126 *Ga.* 609 (4), (55 S. E. 933, 9 L. R. A., (N. S.) 407), "A defendant against whom a verdict has been returned can not complain that the verdict is for a less amount than that demanded by the evidence."

*Judgment affirmed. All the Justices concur.*