### IN THE

# SUPREME COURT OF NEBRASKA.

### JANUARY TERM, 1886.

PRESENT:

Hon. SAMUEL MAXWELL, Chief Justice.
" M. B. REESE, } Judges.
" AMASA COBB,

## Matthew McKeighan, appellant, v. Pitt H. Hopkins, appellee.

1. **Petition:** AMENDMENT: PETITION IN EJECTMENT. A court may permit a petition to be amended when the proposed amendment does not change substantially the claim, although the form of the action may be changed. So long as the identity of the cause of action is preserved, the form of the action is not material. A petition in ejectment, therefore, may be amended to be a petition to redeem—the object in both cases being to recover the land.

2. ——: ——: STATUTE OF LIMITATIONS. In such case the statute of limitations ceases to run against the claim when suit is properly brought thereon.

3. **Principal and Agent:** FRAUD OF AGENT: LIABILITY OF PRINCIPAL. A party cannot retain the benefits derived from the fraudulent conduct of his agent, without being chargeable with the instrumentalities employed to effect the purpose.

3

4. **Judicial Sale:** APPRAISEMENT. When real estate is to be sold as that of the debtor, it is to be appraised as his, and the appraisers have no authority to consider an adverse claim of title.

5. **Mortgage Foreclosure by Mortgagee in Possession.** A mortgagee in possession seeking to enforce his mortgage upon real estate by a decree of foreclosure and sale, occupies a trust relation in regard to the property, and cannot as against the mortgagor, while treating the mortgage as valid, hold adversely as to him.

6. **Judicial Sale.** An appraiser is prohibited by statute from purchasing property appraised by him, and every purchase so made will be considered fraudulent and void.

7. ——: CONFIRMATION. The confirmation of a sale cures all irregularities in the proceedings; but such sale may be afterwards set aside, in a proper case, for fraud. Rule applied and mortgagor allowed to redeem.

APPEAL from the district court of Johnson county. Tried below before BROADY, J.

*T. Appelget & Son*, for appellant.

*S. P. Davidson*, for appellee.

MAXWELL, CH. J.

This case was before this court in 1883, and is reported in 14 Neb., 361, the judgment of the district court being reversed and the plaintiff given leave, upon the payment of all costs, to amend his petition by filing a bill to redeem. An amended petition was filed by the plaintiff, to which the defendant filed an answer. On the trial of the cause the court found the issues in favor of the defendant, and dismissed the action. The plaintiff appeals.

The defendant contends that as the former action was at law the petition cannot be amended by substituting therefor an action in equity, and *Carmichael v. Argard*, 52 Wis., 609, *Board of Supervisors v. Decker*, 34 Id., 380,

*Stevens v. Brooks*, 23 Id., 199, and *Gorman v. The Judge*, *etc.*, 27 Mich., 140, are cited to sustain the position.

Sec. 144 of the code provides that, " the court may either before or after judgment, *in furtherance of justice* and on such terms as may be proper, amend any pleading, process, or proceeding by adding to or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. And whenever any proceeding taken by a party fails to conform in any respect to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

Judge Bliss, in his valuable work on Code Pleading, sec. 429, says: "The supreme court of Wisconsin, in limiting amendments, has been somewhat strict in construing the term 'cause of action.'"

This certainly is true of the early decisions of that court. See cases cited in note 3, sec. 564, Pomeroy's Remedies, etc. At the present time, however, the tendency of decisions in that state seems to be in favor of a more liberal construction of the code. But, however this may be, the code abolishes the distinction between actions at law and suits in equity. If, therefore, an action at law is brought to recover a tract of land, the court certainly has the power to permit the plaintiff to amend his petition so that he may recover the same either at law or in equity. The right to be enforced is the same in either case—the recovery of the land, and so long as the identity of the cause of action is preserved the petition may be amended by stating such facts as the plaintiff may believe to exist in his favor, to entitle him to the relief sought. The restriction in the section above quoted does not refer to the *form* of the remedy but to the identity of the transaction. *Spice v. Steinruck,*

14 O. S., 213. *Lottnam v. Barnett,* 62 Mo., 159. *Hayden v. Hayden,* 46 Cal., 332. *Ballard v. Johnson,* 65 N. C., 436. *Robinson v. Willoughby,* 67 Id., 84.

In the case last cited an action of ejectment was brought to recover possession of the land. On appeal the court held that the deed was in fact a mortgage, and reversed the judgment in favor of the plaintiff. Prior to the second trial an amendment was permitted, changing the form of the action from ejectment to that of foreclosure of mortgage. See also *Roberts v. Swearingen,* 8 Neb., 363. Maxwell's Pl. and Pr. (4th ed.), 174, 175. The authority to grant leave to amend the petition, therefore, is clearly conferred.

1. The appellee claims, however, that even if it is conceded that the court had authority to authorize the amendment in question, still the statute of limitations would run against the cause of action until the amended petition was filed.

In *Martin v. Coppock,* 4 Neb., 173, it was held that the amendment of a mistake in the name of the plaintiff related back to the date of service; and this we think is the general rule. The plaintiff sought in the original petition to recover the land, because he was the owner thereof; and in the amended petition filed by him by leave of court he seeks to recover the land in question, upon the ground that he is the owner of the same, but while asking equity he offers to do equity by paying the defendant all valid claims held by him against the land. The cause of action is the same, although the relief is sought in a different manner from that in the first petition. This, however, does not change the cause of action, and the statute of limitation ceased to run when the summons which was served on him was issued, or if the service was constructive at the date of the first publication of the notice. Code, § 19.

2. It is claimed by the appellant that the appellee obtained the land in question by collusion and fraud. The testimony in the abstract tends to prove the following facts:

That in the appraisement under the decree of foreclosure the value of the land in controversy was found to be $872.15.

Prior incumbrance, tax lien.............................$22.15

Tax title of Pitt H. Hopkins.............................——

Interest of Mathew McKeighan........................$10.00

The land was sold to J. W. Buffum, one of the appraisers, for $156. Buffum testifies that he purchased the land and afterwards sold and conveyed the same by quit-claim deed to the appellee, and received $300 in cash. The attorney for the appellee when the appraisement was made testified on cross-examination, as appears by the abstract, as follows: " Joseph Buffum, the purchaser at the sale above mentioned, is the same person who was one of the appraisers who actually appraised the land in controversy, and the sale was made under that appraisement. The sheriff or deputy sheriff consulted me as to the value of the incumbrances on the premises, and I think the incumbrances were valued in accordance with my suggestions and advice. Further than this I had nothing to do with the appraisement. I may have assisted in preparing the papers. I was the attorney for Hopkins in the foreclosure suit under which the land was being sold. I do not think I gave the sheriff the advice spoken of as the attorney of Hopkins. I know there was no other appraisement made on the land in controversy prior to the sale to Buffum." He also testifies that he was present and did all the business for Hopkins, and that the purchase of the land by Buffum was a surprise to him. Hopkins also swears that " never a word passed between Buffum and myself about the appraisement or purchasing of the land. I was not there from before the foreclosure suit was begun until after the sale." He also testifies that he never authorized his attorney " to do anything in regard to the appraisement or selection of appraisers, or the writing of the appraisement. I simply put the mortgage in his hands for foreclosure in a legal manner."

It can make no difference so far as the liability of the

defendant is concerned, whether he authorized his attorney to procure the interest of the plaintiff to be appraised at a merely nominal sum or not, as he cannot avail himself of such conduct without being charged with all the instrumentalities employed by his agent to effect the purpose. *Joslin v. Miller*, 14 Neb., 91.    *Elwell v. Chamberlain*, 31 N. Y., 611.    *Nat. Exp. Co. v. Drew*, 32 Eng. Law and Eq., 1.

A principal will not be permitted to accept and confirm so much of a contract made by an agent as he thinks beneficial to him and reject the remainder.    *N. E. Mtge. Sec. Co. v. Hendrickson*, 14 Neb., 159, and cases cited.    The defendant, therefore, in obtaining the land for about one-third of its appraised value, is chargeable with the instrumentalities employed by his agent in the appraisal of the land.    The property was to be appraised as belonging to the debtor.    The statute authorizes the appraisers to deduct the value of liens, except those under which the property is being sold, from the gross value.    But adverse titles cannot be considered.    *Sessions v. Irwin*, 8 Neb., 5.    Tax deeds are not liens or incumbrances within the meaning of the statute.    *Id.*    Here was a mortgagee claiming the premises adversely under a tax deed, but at the same time seeking to foreclose his mortgage thereon, and have the premises sold.    Had a sale been made to a *bona fide* purchaser the defendant's entire interest would have been conveyed by the sheriff's deed.    Code, § 853.    Yet he failed to set up such interest in his petition or make any claim therein for the same.    If the defendant's tax deed was valid the entire interest of the plaintiff would have been conveyed thereby, and his interest would have been of no value whatever.

The character of a mortgagee seeking to enforce his mortgage against the real estate is inconsistent with a claim of title by adverse possession.    The mortgagee by accepting a deed from his mortgagor assents to and cannot deny the

mortgagor's title.    *Brown v. Combs,* 5 Dutch., 36–42.    2 Wash. R. P. (4 Ed.), 169.    *Mattis v. Robinson,* 1 Neb., 1. So if he enter into possession as mortgagee under his mort- gage he will not be permitted to deny the title of his mort- gagor, and any release which he may obtain from others will go to strengthen his mortgagor's title.    *Farmers Bank v. Bronson,* 14 Mich., 360.    2 Wash. R. P., 169.    *Mattis v. Robinson,* 1 Neb., 1.    The reason is, that under the com- mon law, where the mortgagee was entitled upon default to enter into possession, he held the premises in trust for the payment of the mortgage debt, and this relation con- tinued until terminated by the action of the parties or the decree of a court.    Cases are to be found where the mort- gagee was permitted to hold adversely, but in all of them the trust relation had not been recognized for so long a period that the bar by adverse possession was complete. But I think no case can be found where a mortgagee claimed rights under a subsisting mortgage, and also adversely to the mortgagee.    It was the duty of the defendant, there- fore, to have set up all his claims for taxes paid in his peti- tion to foreclose the mortgage, and had the amount of the same included in the decree, and the land sold as the property of the mortgagor, any surplus that remained after paying the mortgagee's claims would belong to the mort- gagor.

Sec. 503 of the code provides that, " no sheriff or other officer making the sale of property, either personal or real, or any *appraiser* of such property, shall either directly or indirectly purchase the same; and every purchase so made shall be considered fraudulent and void."

In this case the purchase was not only made by an ap- praiser, who had fixed the value of the plaintiff's property, under the advice, apparently, of the defendant's attorney, at a merely nominal sum, but the price paid was less than one-fifth of its appraised value.    Apparently a fraud on the plaintiff was intended, and the mere denial of such in-

tent does not overcome the presumption arising from the conduct of the defendant's agents.

Suppose an insolvent debtor should give away his property, or a considerable part of it, and thus deprive his creditors of the means of enforcing payment, would a denial of the intent to defraud be a defense against such creditors? That it would not will be conceded, because the intent to defraud is a conclusion of law, arising from the conduct of the debtor. *Babcock v. Eckler*, 24 N. Y., 623. *Potter v. McDowell*, 31 Mo., 62. So in this case the fraudulent intent is a conclusion of law, arising from the conduct of the defendant and his agents.

It is contended on behalf of the appellee that even if there was fraud in the sale under the decree, still the confirmation of the sale cured the defect, and the question is not now open to inquiry.

Sec. 498 of the code provides that, "if the court upon the return of any writ of execution or order of sale for the satisfaction of which any lands and tenements have been sold, shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has in all respects been made in conformity to the provisions of this title, the court shall direct the clerk to make an entry on the journal that the court is satisfied with the legality of such sale, and an order that the officer make to the purchaser a deed of such lands and tenements," etc.

This merely applies to the regularity of the proceedings. No doubt fraud may be shown to defeat the confirmation, as in *Paulett v. Peabody*, 3 Neb., 196. But the facts constituting the fraud or mistake may not be known at that time, yet if made to appear afterwards within a reasonable time, and are sufficient to authorize the cancellation of the sale, relief will be granted. *Frasher v. Ingham*, 4 Neb., 531. Particularly is this true where the entire proceedings are *ex parte* and the party to be affected has no actual notice of the proceedings. We hold, therefore, that the ap-

praisement and sale of the property to an appraiser were fraudulent, and that the appellee is chargeable with the fraudulent acts of his agent, whereby the property was appraised and sold at a merely nominal sum, and that he is not a *bona fide* purchaser.

The judgment of the district court is reversed, and a decree will be entered in this court in favor of the plaintiff, upon his paying to the clerk of this court, within ninety days, for the use of the defendant, the amount of the decree of foreclosure, with legal interest thereon, and all taxes paid by said defendant upon said land, together with 12 per cent interest thereon. We find no claim in the petition for the rental value of said land, although there is some proof upon that point, yet as the question was not presented to the court below it will not be considered here.

DECREE ACCORDINGLY.

THE other judges concur.