MARY BUTLER, APPELLANT, V. BANKS M. SMITH ET AL., APPELLEES.

FILED APRIL 13, 1909. No. 15,363.

1. **Mortgages: CONSTRUCTIVE SERVICE: NAMES.** For the purpose of giving constructive notice to a defendant in a suit to foreclose a mortgage, where he is not sued on a written instrument signed by himself, his legal name includes his first Christian name and surname.

2. ———: ———: **DECREE: VALIDITY.** Foreclosure of a mortgage does not divest the title of a nonresident defendant who was sued by the initial letters of his name, there being no personal service of summons upon him or appearance in his behalf, and the record showing that he did not sign the mortgage or the note secured thereby.

3. **Limitation of Actions: PLEADING: AMENDMENT.** Service of summons in ejectment arrests the running of the statute of limitations in favor of a defendant who claims title by adverse possession, though the form of action is subsequently changed by amendment of plaintiff's petition to a suit to redeem.

4. Adverse Possession: UNIMPROVED LAND. Unimproved and unoccu-
pied land is deemed to be in possession of the holder of the legal
title.

5. ————: EVIDENCE. Title by adverse possession is not established,
unless the proof shows actual, exclusive and continuous posses-
sion under claim of ownership for the full statutory period of
ten years.

APPEAL from the district court for Knox county: JOHN
F. BOYD, JUDGE. *Reversed.*

*M. F. Harrington* and *W. R. Butler,* for appellant.

*J. F. Greene* and *W. A. Meserve,* contra.

ROSE, J.

The subject matter of litigation in this suit is 640 acres
of land in Knox county. Both parties claim title. When
Clement L. Boon was the undisputed owner, he conveyed
the land and 160 acres more to Ellis W. Wall January 1,
1890. Eight days later the grantee and his wife mort-
gaged the entire tract of 800 acres to Pierce, Wright &
Company for $2,850, and by deed, dated January 11,
1890, reconveyed it to Boon, subject to the incumbrance
thus created. Boon did not pay the taxes, interest, or
the mortgage, but left the state a year or two later, and
never returned. September 28, 1903, Boon executed and
delivered to Paul Butler a quitclaim deed to the prem-
ises, and the latter's interest was transferred to plaintiff
March 7, 1904. In the meantime Henry H. Drake became
the owner of the mortgage, brought suit March 1, 1894,
to foreclose his lien, procured a decree of foreclosure,
bought the land August 18, 1894, at judicial sale there-
under, which was confirmed September 25, 1894, and re-
ceived April 27, 1895, a sheriff's deed to the entire tract
of 800 acres. Through mesne conveyances from Drake,
defendants claim title to the 640 acres in controversy and
are now in possession thereof. Plaintiff instituted a suit
in ejectment against them March 11, 1905, for the realty

in dispute. In their answer defendants pleaded the mort-
gage described, an assignment to Drake, nonpayment,
foreclosure, a judicial sale, the sheriff's deed, title in them-
selves through mesne conveyances from Drake, and ad-
verse possession for ten years. After the court acquired
jurisdiction in the ejectment suit, plaintiff was .permitted
to amend her petition by changing the form of action to a
suit to redeem the land and to require defendants to ac-
count for rents and profits. If plaintiff has any right to
redeem, it rests on the quitclaim deed from Boon and the
conveyance from Boon's grantee to plaintiff. Defend-
ants have no title, unless it is derived from the sheriff's
deed to Drake, or acquired by adverse possession. The
trial resulted in a decree for defendants. The suit was
dismissed, and plaintiff appeals.

The trial court held that Boon's title was divested and
the right to redeem terminated by the foreclosure of the
mortgage. Plaintiff insists that this holding was er-
roneous, and that the foreclosure proceedings were void for
the following reasons: Boone did not sign the mortgage
or the notes secured. He was sued by the initial letters
of his name. There was no notice except by publication.
The verification in Drake's petition did not state that he
could not discover Boon's true name, and neither the
summons nor notice contained the words "real name un-
known," as required by section 148 of the code. The title
to the land described in Drake's petition stood on the
public records in the name of Clement L. Boon. On these
facts plaintiff argues that the district court had no juris-
diction to bar her equity of redemption, and that the
sheriff's deed was void. In an effort to meet this attack
on the foreclosure proceedings, defendants adduced proof
in the present case to show that in the name of "C. L.
Boon" he transacted business, accepted deeds, transferred
realty, and acted in the capacity of deputy county clerk
and of notary public. It is insisted by defendants that
these facts show he was sued by his true name. They
have argued this point at some length, and have referred

to a number of cases in support of their contention. Their view of the law, however, cannot be accepted as applicable to the present controversy. Statutes creating a method for bringing a defendant into court without personal service are strictly construed, where actual notice may never reach him. *Stull v. Masilonka,* 74 Neb. 322. For the purpose of constructive. notice under the statutes of this state, in a case where defendant is not sued on a written instrument signed by himself, the legal name of a defendant includes his first Christian name and sur-name or patronymic. *Enewold v. Olsen,* 39 Neb. 59. Not having been so described as a defendant, Boon's title was not divested by the foreclosure proceedings, since he was not personally served with notice, did not appear in the case, and did not sign the mortgage or notes secured by the name of C. L. Boon or by any other name. *Herbage v. McKee,* 82 Neb. 354; *Enewold v. Olsen,* 39 Neb. 59. The law required personal service, when Boon was not sued by his true name. He was protected by that law. The fatal defect deprived the court of jurisdiction to bar his right of redemption. In the present suit the law was not abrogated, nor jurisdiction restored in the foreclosure proceeding by proof that Drake sued him by the initial letters. used by himself and by which he was known in the community. It follows that the title of defendants fails, in so far as it rests on the sheriff's deed to Drake.

Plaintiff also complains of the trial court's ruling that defendants have title to the land by adverse possession. The objection to this finding is that there is no evidence to support it. Plaintiff commenced her action in eject-ment March 11, 1905. Summons was issued the same day, and afterwards returned with the appearance of each of the defendants indorsed thereon. She takes the position that the running of the statute of limitations against her cause of action was arrested March 11, 1905, when the summons was issued. Defendants insist that the eject-ment suit was abandoned, and by reason thereof the

9

statute of limitations continued to run until her action to redeem was barred at a later date. The question thus presented is not an open one in this state. Under both petitions plaintiff asked the court to protect her title, and the changing of the form of action did not delay the assertion of her rights until she filed in the ejectment suit her amended petition to redeem the land. Defendants having waived service of summons in ejectment, the running of the statute of limitations was arrested when it was issued March 11, 1905. In *McKeighan v. Hopkins,* 19 Neb. 33, plaintiff by amendment of his petition changed the form of his action from ejectment to a suit to redeem, and this court, in an opinion delivered by Chief Justice MAXWELL, held that the statute of limitations ceased to run from the date of the summons in ejectment, saying: "The plaintiff sought in the original petition to recover the land, because he was the owner thereof; and in the amended petition filed by him by leave of court he seeks to recover the land in question upon the ground that he is the owner of the same, but while asking equity he offers to do equity by paying the defendant all valid claims held by him against the land. The cause of action is the same, although the relief is sought in a different manner from that in the first petition. This, however, does not change the cause of action, and the statute of limitation ceased to run when the summons which was served on him was issued."

To establish title by adverse possession, it was therefore necessary for defendants to show that Drake took actual and exclusive possession of the premises as early as March 11, 1895. *Clark v. Hannafeldt,* 79 Neb. 566. Drake's action in attempting to enforce his mortgage against the real estate was inconsistent with his claim of title by adverse possession. *McKeighan v. Hopkins,* 19 Neb. 33. He received the sheriff's deed through which defendants claim title as late as April 27, 1895, and ten years had not elapsed March 11, 1905, when plaintiff's ejectment suit arrested the running of the statute of limitations. There is evidence that Drake and his gran-

tees did not have exclusive occupancy for the statutory period; that the land was never cultivated after 1890; and that it was open territory or commons, where cattle ran at large, as late as May 24, 1895. Unimproved and unoccupied land is presumed to be in possession of the person holding the legal title. *Herbage v. McKee,* 82 Neb. 354; *Yorgensen v. Yorgensen,* 6 Neb. 383; *Troxell v. Johnson,* 52 Neb. 46. There is no pretense that Drake ever made a personal effort to take possession of the premises. Defendants rely chiefly on the testimony of E. D. Wigton to establish title by adverse possession. Wigton lived in Sioux City, Iowa, and was Drake's attorney. For a time John Green was lessee and Robert Peyton was local agent under Wigton's directions. Wigton testified that he came over from Iowa and went out to the land in the summer or fall of 1893. When asked what he did upon that occasion with reference to taking possession, he answered: "I viewed the land, and it was particularly pointed out to me by a Mr. Green who had been using it for grazing purposes; and I informed Mr. Green that I represented the man who held the mortgage against the the land, and that the interest on the mortgage and taxes were delinquent, and that I had charge of the land for my client, and instructed him that the rents hereafter would be payable to my client; Mr. Boon and Mr. Wall both being out of the country, and unable to reach them by any usual process." Wigton further stated that on behalf of Drake he declared himself to be in possession of all the land described in the mortgage, and claimed the same against all the world; that he actually took possession openly and notoriously under claim of ownership; that Green was pasturing the land at the time, and was instructed to make settlement with Peyton, and that Green agreed to recognize Drake as landlord. Wigton also testified that he afterwards saw the land on two different occasions. Green stated that he never rented the land from Wigton, and never paid any rent except to Peyton. Pey-

ton said he never leased the land to any one before May 24, 1895, and that the first rent received was for the period between May 24, 1895, and January 1, 1896. The lease is in the record. It is dated May 24, 1895, expired January 1, 1896, and is signed by Green and Peyton. In a letter dated May 17, 1895, Wigton wrote Peyton as follows: "We have arranged to take legal steps, if necessary, to disabuse Mr. Green of his idea in regard to control of the land. * * * It might be Green would rent land, but he must first get the idea of his right to the land out of his head." In a letter dated May 22, 1895, Wigton wrote Peyton further: "You may rent the land to Green for pasturage for $40 cash, lease to run to January 1, 1896. Sign lease 'Henry H. Drake' by you as agent, and have it distinctly understood therein that Green acknowledges Drake's ownership, and that he will give possesssion without further trouble January 1. Green's claim to the land is entirely without foundation, even if he had rented it from some other party, as the sheriff's deed entitled Drake to possession." Wigton's testimony that he viewed the land, and his conclusion that he took possession for Drake, when considered with his letters and the entire record, fail to show actual and exclusive possession under claim of ownership prior to May 24, 1895. From that date ten years did not elapse before plaintiff brought her ejectment suit March 11, 1905. Defendant's testimony has been carefully considered, and is found to be wholly insufficient to establish title by adverse possession for the full statutory period.

Delay on the part of plaintiff in bringing her suit is also urged to defeat her recovery, but the rule in this state is that an action to redeem may be brought at any time before the statutory bar of ten years is complete. *Dickson v. Stewart*, 71 Neb. 424.

For the reasons given, the decree of the district court is reversed and the cause remanded for further proceedings.

REVERSED.