WALTER S. STRATTON, APPELLEE, V. MARTIN H. MCDER-
MOTT ET AL., APPELLANTS.

FILED JUNE 13, 1911. No. 16,478.

1. **Quieting** Title: NAMES: ESTOPPEL. The surname and an initial let-
ter may constitute the full name of an individual, and, when a
grantee is so named in his title of record, it will not be presumed
that he has another name. If he conveys the land in the name by
which he holds it of record, he will be estopped as against his
grantee to allege that it is not his true name.

2. ———: ———: ———. A deed was taken in the name of H. Emer-
son as grantee. It was duly recorded, and the grantee took pos-
session of the land thereunder. There was nothing upon the
deed record indicating that the grantee had any other name. In
the meantime the county brought an action against H. Emerson
and others to forclose its lien for taxes which were delinquent
for several years; the action proceeded to foreclosure and sale,
and sheriff's deed issued, which it is stipulated also described
him as H. Emerson. *Held*, That Emerson's grantee is estopped
to allege, in an action to quiet his title against the purchaser at
said sheriff's sale, that his grantor's true name was not H.
Emerson.

APPEAL from the district court for Lincoln county.
HANSON M. GRIMES, JUDGE. *Reversed with directions.*

*L. E. Roach* and *E. H. Evans,* for appellants.

*Wilcox & Halligan, contra.*

SEDGWICK, J.

The plaintiff claims a quarter section of land in Lincoln
county through a quitclaim deed from one Harrington
Emerson. The defendants claim the land through sheriff's
deed upon foreclosure of delinquent taxes. The question
presented is as to the sheriff's deed. The trial court found
the sheriff's deed invalid and entered a decree canceling
it. The defendants have appealed.

Emerson held a mortgage on this land, which was duly

recorded, and in which he was described as H. Emerson. He foreclosed the mortgage in an action in which H. Emerson was plaintiff, and was so described in all of the proceedings in that foreclosure. He was the purchaser in the sale upon the foreclosure of his mortgage, and purchased the land in the name of H. Emerson, and received a sheriff's deed in that name. He recorded his deed and held the land under it for more than six years, and was generally known and did business in the name of H. Emerson. Having neglected to pay the taxes on this land, the county began foreclosure proceedings in September, 1900. In the title of the action in this petition for foreclosure he was named as "H. Emerson, first name unknown," and his wife was named as "—— Emerson, his wife, first name unknown." It is stipulated by the parties that in all subsequent proceedings he was named "H. Emerson." He was not a resident of this state at that time, and service was obtained by publication. In the affidavit for service and in the publication of the summons he was named H. Emerson, without any other name or description, as well as in the findings, decree, return of sale and confirmation. The defendant Martin H. McDermott purchased the land, and upon confirmation received a sheriff's deed in 1901, and has since that time been in undisputed possession of the land. About seven years thereafter the plaintiff obtained a quitclaim deed, executed by Harrington Emerson, and began this action to cancel the defendant's deed and quiet the plaintiff's title. The defendant answered, alleging substantially the above facts, and alleged that Emerson "took the said lands by deed of record and held the same under the designation of H. Emerson, and as such and by such name he is deemed to have taken, owned and held said described lands, and by none other, and the said H. Emerson, Harrington Emerson, and his or their grantees are estopped by law from denying that said lands were taken, owned and held by him, the said H. Emerson, under the name of Harrington Emerson or any other name, appellation or designation, and is further es-

topped from denying that notice conveyed to him, in accordance with the laws of the state of Nebraska, under the name of H. Emerson is not a good and sufficient service of process on him, the said H. Emerson or Harrington Emerson."

Under these circumstances, are Emerson and his grantees estopped to allege, for the purpose of vacating the tax foreclosure proceeding, that H. Emerson was not the true name of the owner of the land? Section 148 of the code provides: "When the plaintiff shall be ignorant of the name of a defendant, such defendant may be designated in any pleading or proceeding by any name and description, and when his true name is discovered the pleading or proceeding may be amended accordingly. The plaintiff in such case must state, in the verification of his petition, that he could not discover the true name, and the summons must contain the words 'real name unknown,' and a copy thereof must be served personally upon the defendant."

As there was no statement in the verification of the petition in foreclosure nor in the summons that plaintiff could not discover the true name, the proceedings were not under this section of the statute. It is a familiar rule, which has often been applied by this court, that a defendant must be sued by his true name "if the same is known or can be ascertained by the party suing him," and that the name of a person consists of a given name and a surname. *Enewold v. Olsen,* 39 Neb. 59. "Statutes creating a method for bringing a defendant into court without personal service are strictly construed, where actual notice may never reach him." *Butler v. Smith,* 84 Neb. 78. It has been many times held by this court that an action in which the defendant is sued in the initial letters of his name only is irregular, and in the absence of personal service no valid judgment can be rendered. *Enewold v. Olsen, supra; Butler v. Smith, supra; Herbage v. McKee,* 82 Neb. 354; *Gillian v. McDowall,* 66 Neb. 814; *McCabe v. Equitable Land Co.,* 88 Neb. 453; *McNamara v. Gun-*

*derson, ante,* p. 112. These cases, however, do not decide the precise question involved in the case at bar.

The plaintiff contends that H. Emerson, who held the title to this land, is one and the same person with Harrington Emerson, from whom he obtained the quitclaim deed. The evidence tending to show this identity, it is urged, is not satisfactory; but we prefer to consider the evidence as sufficient upon this point for the purpose of this discussion.

The trial court made special findings of fact upon the issues presented in the petition, but made no findings upon the allegations of the answer upon which the estoppel against the plaintiff is predicated. We are for the first time called upon to determine whether the plea of estoppel constitutes a defense in such an action. It appears that this precise question has been before the courts of our sister states and, so far as we have observed, such estoppel has generally been held to constitute a good defense. In *Blinn v. Chessman,* 49 Minn. 140, defendant George Chessman had taken title to land by deed in which he was named "George Cheeseman." The deed was recorded. A few years later he left the state, and an action was begun against him and another "to determine their adverse claims to the property." In that action he was named, as in the deed, "George Cheeseman," and service was by publication only. The matter determined by the court is stated in the opinion as follows: "The principal question here presented is whether that judgment against Cheeseman was of effect as to this defendant Chessman, as respects his title to the land." The opinion contains a satisfactory discussion of the question of estoppel in such case. It holds that the defendant, by taking title in that name and placing his deed upon record, put himself in a position so that "he cannot well complain that the name in which he took the title, and which he put forth to the world, by the records, as the name of the grantee, should be employed in proceedings instituted for an adjudication concerning that title." The opinion is

43

quoted quite at length by the supreme court of California in *Emery v. Kipp,* 154 Cal. 83, 97 Pac. 17, a very recent case, decided in 1908. In that case the title to land was taken in the name of Louisa Munro, and the title deed was so recorded. The true name of the grantee, who was at that time an unmarried woman, was Madaline Louisa Munro. After this deed was taken and recorded, she married Mr. Emery, and still later an action to quiet title was prosecuted against her in which she was named Louisa Munro. It was claimed that the judgment against her obtained in that name was void and subject to collateral attack, but the court held otherwise, and discusses the question somewhat at length. The law governing the case is stated in the syllabus (97 Pac. 17) as follows: "If one takes title to land in any other than his true name, so far as that property is concerned, he has assumed the name in which he takes title, and he may be sued thereunder." The court cites, also, with approval *Elting v. Gould,* 96 Mo. 535, 9 S. W. 922. This latter case appears to present substantially the same question as the one presented in the case at bar. In that case Richard O. Elting was the owner of the land involved. He had taken the patent from the United States in which he was named R. O. Elting. The patent was duly recorded, and afterwards an action was brought to enforce a tax lien in which the defendant was named R. O. Elting. The service was by publication. The question was as to the validity of the judgment in those proceedings. In that state it has been held that "publication addressed to Q. R. Noland was not sufficient to give the court jurisdiction of Quinces R. Noland" (*Skelton v. Sackett,* 91 Mo. 377, 3 S. W. 874), the same doctrine to which this court has adhered in many prior decisions. The court distinguishes the case then under consideration from the former case cited in these words: "There is this difference between this case and that one, and we think the difference is material: There, the recorded patent showed title in Quinces R. Noland; here, the patent which was recorded in Barton county, and

which was the only evidence of title on record, showed that R. O. Elting owned the land. It is by this name and description that he is known in his own title papers, and it is an admitted fact that he was a nonresident of this state."

It is insisted that in the case at bar the defendant was not sued by his complete name, nor in any complete name; that, although his surname is stated in full, only the initial letter of his Christian name was stated. There is no just ground for this distinction. The law does not forbid the use of letters as names. This court has several times recognized that fact. In *Oakley v. Pegler,* 30 Neb. 628, this court said: "Whether an apparently initial letter will be treated as a name must depend upon the manner in which the question is raised." And in *Scarborough v. Myrick,* 47 Neb. 794, the rule is stated to be: "In the absence of a showing to the contrary, it will not be presumed, for the purpose of invalidating a judgment rendered against a defendant, that he has any other Christian name than the initials by which he was sued." The court was considering a case in which the defendant had been named by initial, and it was held that the initial would be presumed to be his entire name, as the record "nowhere discloses that the defendant has any other Christian name than the initials by which he was sued." The supreme court of Colorado has discussed this point more fully, and in that discussion said: "Twelve authorities are cited in support of the proposition 'it is a presumption of law that every person has both a Christian and a surname.' No doubt that such is the legal presumption, but no authority is cited to show that 'M. H.' may not be the Christian name, and all there is of it." *Taylor v. Insley,* 7 Colo. App. 175, 42 Pac. 1046. The supreme court of Wyoming in *Perkins v. McDowell,* 3 Wyo. 328, 23 Pac. 71, said: "While it does not occur frequently, there are many instances where single letters constitute the only Christian name. We cannot, then, judicially know that the letters 'J. M.' are not a name, and, as the petition does not disclose that the

letters 'J. M.' are not the Christian name of the plaintiff, it follows that there is no defect apparent on the face of the petition in this respect."

We think that if one takes a title to real estate, and takes it in the name by which he is commonly known, and so records his title and holds possession and the use of the land under that record title, in an action to test his interest in the lands he may be named as he is named in his record title, and, if such action proceeds to judgment, he ought to be estopped to attack that judgment and the proceedings thereunder collaterally. A man's Christian name may consist of a letter only, and, if he is so named in his title of record, he ought also to be estopped in collateral proceedings to allege that the name so assumed is not his full name. *McCabe v. Equitable Land Co., supra,* and *McNamara v. Gunderson, supra,* are not inconsistent with this view. In the former the defendant was not sued in the name in which he held the title. In his deed he was named Rolland B. Ballard, and the action was against him in his initial only. The holding therefore in that case was in harmony with our former decisions. The latter case is clearly distinguished from the case at bar by the language of the opinion. It is said: "It is conceded that there is no element of estoppel in this case, and it is apparent that the record title to the land in question was in the railroad company at all times prior to the 5th day of November, 1906. Therefore the taxes which became delinquent and which were the basis of the foreclosure proceedings must have been assessed against that company. The record owner against whom the property was assessed was not made a party to the foreclosure suit." The defendant in the foreclosure proceedings had no title of record when that suit was begun nor until several years after final decree therein.

We think that in this case, under the facts stipulated by the parties, the plaintiff is estopped to say that the name in which his grantor took and held this land was not his true name.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a decree dismissing the action at plaintiff's costs.

REVERSED.

LETTON, J.

I concur in the conclusion for the reason that in my opinion section 77 of the code applies, and not section 148.

ROOT, J.

For the following reasons, I dissent from the majority opinion: The opinion, while professing to respect, actually overrules, *Gillian v. McDowall*, 66 Neb. 814, and the long line of decisions determined upon the authority of that case.

In *Gillian v. McDowall, supra,* a mortgagee was described in his mortgage, which was recorded, as J. P. Johnson. Subsequently a Mr. Cunningham foreclosed a tax lien upon the mortgaged premises, impleading Johnson as a defendant, and describing him in the pleadings, process and proceedings as "J. P. Johnson." There was substituted service of summons; Johnson did not appear, his default was entered, and a judgment rendered adverse to his mortgage estate. In the reported case it was held that this judgment was void as to Johnson and his interest in the land, because he had not been sued by his true name. This case cannot be distinguished in a substantial particular from the one at bar. The comprehensive declaration of the law that the judgment was void includes a negative of every argument that might be advanced to sustain its validity.

The legislature recognized the common law upon the subject as amended by acts of parliament subsequent to the independence of the colonies, by making few exceptions to the general rule that a natural person has one given and one surname, and, if sued in a court of justice, should be described by that name. The first exception is contained in section 23 of the code, which is as follows: "In all actions upon bills of exchange or promissory notes, or other

written instruments, whenever any of the parties thereto are designated by the initial letter or letters, or some contraction of the Christian or first name or names, it shall be sufficient to designate such person by the name, initial letter or letters, or contraction of the first name or names, instead of stating the Christian or first name or names in full." This statute is practically the same as paragraph 12, ch. 42, 3 and 4 William IV, and evidences the intention of the legislature not to depart from beaten paths. Section 23, *supra,* does not authorize a plaintiff to implead a defendant by any other than his Christian name, except in the cases mentioned. *Elberson v. Richards,* 42 N. J. Law, 69.

Another exception is found in section 148 of the code, which provides: "When the plaintiff shall be ignorant of the name of a defendant, such defendant may be designated in any pleading or proceeding by any name and description, and when his true name is discovered, the pleading or proceeding may be amended accordingly. The plaintiff in such case must state, in the verification of his petition, that he could not discover the true name, and the summons must contain the words 'real name unknown' and a copy thereof must be served personally upon the defendant." The defendant cannot invoke this statute for his protection because the county did not comply with its terms. There are no other exceptions in the code to the general rule, and they are good evidence that none other were intended unless granted by some other statute.

That this court is committed to that doctrine plainly appears from the discussion in *Butler v. Smith,* 84 Neb. 78. Our code was copied from the Ohio code, and upon a consideration of the sections of that code, identical with sections 23 and 148 of ours, the supreme court of that state held in *Uihlein v. Gladieux,* 74 Ohio St. 232, that substituted service of process against a defendant sued by a fictitious name is void, and that an allegation in the bill of particulars that the real name of the defendant is unknown is equivalent to a statement that the name em-

ployed is fictitious. The action in that case was at law, but the principle controls.

The action prosecuted by the county attorney was against "H. Emerson, first name unknown." This recital appears in practically all of the subsequent proceedings and is included in the sheriff's deed, so that all persons claiming thereunder knew that the owner of the real estate had been sued by a fictitious name.

The legislature, by authorizing the owners of certificates of tax sale to maintain an action against the land where its owner is not known, clearly indicated its intent not to further depart from the general rules in actions for the enforcement of tax liens. The law has been uniformly thus construed heretofore, and, if further exception is to be made, it should be authorized by the legislature. Of course, where the defendant appears or where process is served upon him personally, the reason for the rule fails, and decisions in those cases are without value in the instant one.

If the major premise in the majority opinion is accepted, the conclusion is not sound. That premise is that, where one accepts title to real estate by a name, fictitious or otherwise, he is estopped by the recitals in his deed to thereafter deny that his name is correctly stated therein. In other words, there is an estoppel by deed. A tax purchaser, however, does not claim under the former owner of the real estate, or under any deed other than the one executed by the individuals designated by law to convey, not the former owner's title, but an independent title to the grantee.

If, although the asserted estoppel is created by recitals in a deed, the uniform rules of law with respect to such estoppels are to be ignored, there is nothing in this record to create an estoppel. The action having been prosecuted by the county without an antecedent administrative sale was not authorized by law, although the decree could not be successfully assailed in a collateral proceeding. *Logan County v. Carnahan*, 66 Neb. 685. Harrington

Emerson was not responsible for the action; he was bound to anticipate that his land might be sold by administrative proceedings if he did not pay the taxes, or that after an administrative sale, but before deed, the holder of the certificate of tax sale might maintain an action against the real estate, but he should not be charged with notice that the county would maintain an action without legal authority whereby his land would be sold to pay that tax.

The record discloses that the defendant paid less than $2 an acre for the land. This court has carefully protected the owners of real estate against tax deeds executed in administrative proceedings. Why should it look with indulgence upon tax deeds issued in actions not authorized by law? Why should it strain the principles of estoppel to take from the plaintiff his property and give it to a stranger?

The decree of the district court protects the defendant by requiring the plaintiff to pay all money invested by the defendant in the land, whether to satisfy the taxes or to pay for improvements made thereon, with legal interest; it does equity between the litigants, and respects the former decisions of this court, and should be affirmed.

FAWCETT and ROSE, JJ., concur in this dissent.