13880. BENNETT, superintendent, etc. *v.* SIMMONS.

1. A "surety may tender to the creditor the amount of his debt, and demand that the evidence of and the securities for the same be delivered up to him to be enforced against his principal .or cosureties; and a failure of the creditor to comply, when within his power, shall operate to discharge the surety." Civil Code (1910), § 3545.

2. Where, to an action by the superintendent of banks against a surety upon a promissory note payable to a bank of whose "assets and business" the plaintiff shall have taken possession under the provisions of the act of August 16, 1919, the surety pleads that he is discharged by a refusal of a tender and demand allowable under the section of the code above referred to, made during such possession of the bank by the plaintiff, the burden is upon the surety to prove that the tender and demand were made either to the superintendent of banks or to one duly authorized by him, as provided in the act, to make collections for the bank.

3. The proof did not demand a finding that the plea was sustained, and the court committed error in directing a verdict for the defendant.

DECIDED JUNE 27, 1923.

34

Complaint; from city court of Dublin — Judge Sturgis. July 14, 1922.

T. R. Bennett, as superintendent of banks, in possession of the assets and business of the Bank of Dublin, filed a suit against E. G. Simmons, upon two promissory notes dated and due in 1920, payable to the bank. The defendant filed a special plea as follows: " That he is not indebted to the plaintiff in any amount, for the reason that this defendant was a surety on the notes sued on, which was known to the Bank of Dublin, and that the bank had an opportunity to collect the debt out of the principal, G. W. Lowery, but by its negligence failed to do so, of which the Bank of Dublin was advised. When they had failed to take action against the debtor by attaching his property when he was removing from the county, after this defendant endeavored to get them to, this defendant went to the bank and called on the person in charge to let him have his note, which he offered to pay, so that he could take proper action to protect himself. This person *in charge of the affairs of the bank* [italics ours] refused to accept payment for the note and surrender it to the defendant, which put the defendant in position where he could not take action to protect himself. By reason of the aforesaid conduct of the Bank of Dublin, this defendant has suffered loss and his risk has increased, and he shows that he is discharged from all liability on said debt, and he prays that his answer be sustained and no judgment be taken against him." By amendment it was further alleged " that the party with whom he dealt at the Bank of Dublin was *the sole party in charge of said institution* [italics ours] the latter part of November, 1920. He was placed in charge of the bank by the plaintiff, and defendant does not know his name, but shows that he was a man small in stature and wore glasses, and that plaintiff knows his name and the identity of the said party." A demurrer interposed by the plaintiff upon grounds both general and special was overruled, and no exceptions were taken to this judgment.

The defendant gave testimony as follows upon the trial: " The notes sued on were signed by G. A. Lowery, principal, and by J. M. Page Jr. and myself as sureties. G. A. Lowery moved away from the county to Athens, Ga., I think, in the fall of 1920, and carried his property with him. I went to the bank and tried to get the bank to attach Lowery's property at the time he was mov-

ing out of the county and carrying his property with him. The man at the bank would do nothing, and said he did not have authority to let anything go out of the bank. I went back to the bank again and offered to take up the notes, so I could get possession of them and take action myself to protect myself, but the man in charge of the bank told me he did not have authority to accept payment and deliver the notes to me. At that time the bank was in the hands of the superintendent of banks, and it was about thirty days after the superintendent of banks had taken charge of the bank. This man at the bank appeared to be auditing and working on the books and checking over the notes. He was the only person in the bank, except I think a young lady was there, and the front doors were open, and he was in charge. I went to the bank with a check in my pocket with which to pay the notes, but he told me he did not have authority to accept payment and turn the notes over to me, and he refused to let me have them. I explained why I wanted this done, as I was surety on the notes. Lowery moved away to Athens, Ga., without the bank taking any action to attach his property, and the debt was thrown on me. The notes were at the bank at that time." No other evidence was introduced except the notes offered by the plaintiff.

The plaintiff excepts to the direction of a verdict in favor of the defendant.

*George L. King,* for plaintiff.

*Larsen & Crockett,* for defendant.

BELL, J. (After stating the foregoing facts.)

The judgment overruling the plaintiff's general demurrer, being unexcepted to, stands as a solemn adjudication that the plea was good. *Hollis* v. *Nelms,* 115 *Ga.* 5 (4) (41 S. E. 263) ; *Sims* v. *Georgia Ry. &c. Co.,* 123 *Ga.* 643 (51 S. E. 573) ; *Dolvin* v. *American Harrow Co.,* 125 *Ga.* 699, 702 (54 S. E. 706, 28 L. R. A. (N. S.) 785) ; *Pierpont Mfg. Co.* v. *Mayor &c. of Savannah,* 153 *Ga.* 455 (1) (112 S. E. 462). If the plea was not good already, it must be treated as sufficient in the present consideration. Was it sustained by the proof?

Section 3545 of the Civil Code (1910) provides that "the surety may tender to the creditor the amount of his debt, and demand that the evidence of and the securities for the same be delivered up to him to be enforced against his principal or cosureties; and

a failure of the creditor to comply, when within his power, shall operate to discharge the surety." It appears from the answer that the tender and demand set up by the defendant occurred during the lawful possession of the assets and business of the bank by the banking department of the State, and were made to a " person in charge of the affairs of the bank," other than the plaintiff himself, the superintendent, but placed there by him.

The act of August 16, 1919 (Ga. L. 1919, p. 135), establishing the department of banking, and creating the office of superintendent of banks, provides that the seat of this office shall be at the State Capitol, Art. 2, sections 2 and 8. While this officer has possession of a bank only he or his authorized agent may collect its debts. Art. 2, sections 7 and 9. Although he is not required to transfer its assets and affairs to his office at the Capitol, he is not expected, under the act, to be present at all times at the office of the bank, either in person or by an agent clothed with his power. He may designate an agent to perform such duties connected with the liquidation as he himself in person could do. Art. 2, sections 9 and 10. But the circumstances of a particular case may not in his judgment demand the appointment of such agent. He may conclude to surrender the bank to its officers. Art. 7, sec. 6. The fact that some person is, during his control, in the building or office of the bank, engaged in work upon its books or papers, does not, without more, establish that the person has authority to make collections. This is true for the reason, among others, that " the superintendent may employ such attorneys and procure such expert accountants and other experts, assistants and employees as may be necessary in the liquidation and distribution of the assets of such bank, and may retain such of the officers or employees of such bank as he may deem necessary." Art. 7, sec. 10. Persons so employed might be present at the bank for no other purpose than that of making an audit. In the interim the necessity of liquidation and the appointment of an agent with the authority of collection, entailing expense, may not have been determined. It certainly could not be claimed that during this period the superintendent himself should abandon the seat of his office, from which he is to render his service to the State as a whole, merely for the purpose of remaining at the bank to receive such tenders as may formally be made by persons indebted.

No proof is submitted of the authority of the person to whom the tender and demand were made. The defendant did not carry the burden of proving his plea that the tender and demand were made to a "person in charge of the affairs of the bank." As a part of the same transaction, the person referred to declared his lack of authority. The testimony went only to the extent of showing that the person was *in the bank,* apparently as some clerical employee, but declaring *that he was not in charge of its affairs.* For aught that is shown, the tender and demand were properly refused.

Although the plea was adjudged to be good, since the proof *does not measure therewith,* we may legitimately observe that if the evidence as submitted should establish the defense as claimed, it would be possible for the surety, upon every obligation held by a bank of which the superintendent may take charge, to enter at once and tender the payment to some clerical employee, and become totally discharged upon the tender being refused, however proper its rejection might be.

If a surety upon a note which is payable to a bank whose affairs are in the control of the superintendent of banks desires to exercise the rights given under section 3545 of the Code, the tender and demand must be made either to the superintendent himself or to some agent empowered to act, in the manner provided by law; and if the tender is made to an agent, the burden of proving his authority will rest upon the surety. 21 R. C. L. 19. If this should require that in some instances the tender should be made at the superintendent's office at the Capitol, and thus work a hardship, we should reply that in the case now before us the notes were signed after the passage of the act now in question, and the possibility of such a burden was thereby assumed.

The defendant cannot be discharged merely by the failure of the superintendent to have some one at the bank to accept the tender (although this is not exactly the plea), nor is it to be presumed that every person who may be in the physical custody of the building or of the bank's papers is vested with the power to collect its debts. The assets of the bank while thus under official control are held in trust for the depositors and creditors. They are really in the custody of the law, and its moneys are to be handled by those only whom the law shall name. A verdict for

the defendant was neither demanded nor authorized under the proof as submitted, and it was error to direct it.

Nothing contained in section 25 or section 26 of article 7 of the act, regarding the election of a liquidation agent to wind up the affairs of the bank for the benefit of the stockholders, will alter the case at bar, for the reason that these sections are applicable only " whenever the superintendent shall have paid to each and every depositor and creditor of such bank whose claim shall have been duly proven and allowed, the full amount of such claim, and shall have made proper provision for unclaimed and unpaid deposits and disputed claims and deposits, and shall have paid all the expenses of liquidation. " Art. 7, sec. 25.

The fact that the suit in this case proceeds in the name of the superintendent as plaintiff, with the admissions of the answer, conclusively shows that no agent had ever been elected under the provisions of these sections.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*